**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x

PS US LLC, formerly known as                              :
PHARMASPECTRA, LLC,                                       :        Case No.  1:21-cv-01049-VEC
                                                         :
                        Plaintiff,                       :
                                                         :
v.                                                       :
                                                         :
JEREMY MOULDING,                                         :
                                                         :
                        Defendant.                       :

---------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     RELEVANT FACTS AND PROCEDURAL HISTORY .......................................... 3

        A.   Sale Of Plaintiff's Assets ............................................................................ 3

        B.   The Terms Of The Agreements .................................................................... 5

             1.   The Business Purchase Agreement .................................................... 5

             2.   The Asset Purchase Agreement ......................................................... 7

        A.   The "Equity Incentive Payment" ................................................................. 8

        B.   Post-Closing Earn-Out Targets .................................................................... 9

        C.   Changes to Plaintiff's Status in Delaware and New York ........................... 9

        D.   Procedural History ....................................................................................... 10

III.    MOTION TO DISMISS STANDARD .................................................................... 11

        A.   Dismissal for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1). ...... 11

        B.   Dismissal for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ......... 12

        C.   Dismissal For Failure To Join A Party Under Rule 19 Pursuant To
             Fed. R. Civ. P. 12(b)(7) ............................................................................... 13

IV.     ARGUMENT ........................................................................................................... 13

        A.   Plaintiff's Claims Should be Dismissed For Lack of Standing ...................... 13

             1.   Plaintiff Lacks Standing Because It Assigned Away Its Right To Bring The
                  Claims Raised in the Amended Complaint When It Sold Its Assets To
                  Pharmaspectra Group. .................................................................... 14

             2.   Plaintiff Also Lacks Standing To Bring The Claim Asserted In Count VIII
                  Because There Is No Actual Justiciable Controversy. .......................... 19

        B.   The Amended Complaint Should Be Dismissed Based On The BPA's Forum Selection
             Clause and the Doctrine of Forum Non Conveniens ........................................ 20

             1.   The BPA's Forum Selection Clause is Presumptively Enforceable and None of
                  the Exceptions to Enforcement Apply ................................................ 22

C.   Plaintiff's Amended Complaint Should Be Dismissed Pursuant To Fed...................... 26

    1.   Counts I-VII Of Plaintiff's Amended Complaint Should Be Dismissed Because Pharmaspectra Group And Inflexion Are Necessary And Indispensable Parties Whose Joinder Is Not Feasible ............................................................. 27

    2.   Count VIII Of Plaintiff's Amended Complaint Should Be Dismissed Because The United Kingdom Tax Authority Is A Necessary And Indispensable Party Whose Joinder Is Not Feasible ............................................................. 29

D.   Plaintiff Is Not Authorized To Do Business In The State Of New York And Therefore Is Statutorily Barred From Maintaining The Action ........................................................... 30

E.   Plaintiff's Amended Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted In Counts I-VII Of The Amended Complaint.. 31

    1.   Plaintiff's Breach of Contract Claim Fails ........................................... 31

    2.   Plaintiff's Breach Of Fiduciary Duty Claim Is Duplicative And Fails To State A Claim ................................................................................................ 35

    3.   Plaintiff's Unjust Enrichment Claim Fails ........................................... 37

    4.   Plaintiff Fails to Plead Fraud .............................................................. 39

    5.   Plaintiff Cannot Set Forth A Claim For Civil Conspiracy .................... 42

    6.   Plaintiff's Tortious Interference with Prospective Economic Gains Claims Fail ......................................................................................... 44

V.   CONCLUSION............................................................................................. 45

**TABLE OF AUTHORITIES**

<u>Cases</u>

*A. v. Airline Tariff Publishing Co.*, 580 F.Supp.2d 285 (S.D.N.Y.2008)……………………….35

*Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-CV-7055 (AJN), 2015 WL 3540848
(S.D.N.Y. June 5, 2015)……………………………………………………………….…..5

*Aaron Ferer & Sons Ltd.  v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112
(2d Cir. 1984)………………………………………………………………………………15

*Aetna Cas. & Sur.  Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)………….…43

*Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002)………………………………………….24

*Allocco Recycling, Ltd.  v.  Doherty*, 378 F. Supp. 2d 348 (S.D.N.Y.  2005)……..……………45

*Arnold v Britton*, [2015] UKSC 36; [2015] AC 1619……………………………………………16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………..12

*Assoc. v.  First Union Natl. Bank of N. Carolina*, 234 A.D.2d 187 (1st Dep't 1996)…………..34

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S.  49 (2013)
………………………………………………………………………………....20, 21, 23, 25

*AYDM Assocs., LLC v.  Town of Pamelia*, 205 F.  Supp.  3d 252 (N.D.N.Y.  2016)……………44

*Balta v.  Ayco Co.*, 626 F.Supp.2d 347 (W.D.N.Y.2009………………………………………...35

*Bell Atl.  Corp v.  Twombly*, 550 U.S.  544 (2007)………………………………………………13

*Boehner v. Heise*, 734 F. Supp. 2d 389 (S.D.N.Y. 2010)……………………………………….44

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)………………………………...5

*Carver v.  City of New York*, 621 F.3d 221 (2d Cir.  2010)……………………………………...14

*CBS Broad.  Inc.  v.  Jones*, 460 F.  Supp.  2d 500 (S.D.N.Y.  2006)…………………………….39

*Cohen v.  Acorn Int'l Ltd.*, 944 F.  Supp.  204 (S.D.N.Y.  1996)………………………………...31

*Cohen v.  Koenig*, 25 F.3d 1168 (2d Cir.  1994)…………………………………………………41

*Cohen v. BMW Invs. L.P.,* 144 F. Supp. 3d 492 (S.D.N.Y. 2015)………...……………………38

*Commonwealth of Pa. Pub. Sch. Emp.'s Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d
(2015)……………………………………………………..………………………….16, 18

*Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d (2017)…………………...........…..42

*ConnTech Dev. Co. v.  Univ. of Connecticut Educ. Prop.'s, Inc.*, 102 F.3d 677
(2d Cir. 1996) ...........……………………………………………………………….…26

*Corsello v.  Verizon N.Y., Inc.*, 18 N.Y.3d (2012)…………………………………………….38

*Crigger v.  Fahnestock & Co.*, 443 F.3d 230 (2d Cir.  2006)…………………………...……41, 42

*Decker v.  Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir.  1982)……………………..………40

*Diamond State Ins.  Co. v. Worldwide Weather Trading LLC*, No. 02 Civ. 2900,
2002 WL 31819217 (S.D.N.Y.  Dec. 16, 2002)……………………………..…………..42

*Verizon Servs. Corp.*, No. 14 CIV. 1741 (GWG), 2015 WL 1283676
(S.D.N.Y. Mar.  20, 2015) …………………………………………….11, 15, 16, 17, 18, 19

*DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242 (2d Cir.  1987)……………..………39

*Donohue v Armco Inc.*, [2001] UKHL 64……………………………………………..………..22

*Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769 (2d Cir. 2020)………..…………....20, 21

*E-Global Alliances, LLC v. Anderson*, No. 10 Civ.  2844, 2011 WL 8879268
(S.D.N.Y.  May 11, 2011) …………………………………………..…………..…..…..36

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162
(S.D.N.Y. 2011)……………………….... …………………………………………….....35

*Eternity Glob. Master Fund Ltd. v.  Morgan Guar.  Tr. Co. of N.Y.*, 375 F.3d 168

(2d Cir. 2004)……………………………..…………………………….....40, 41

*Excellent Home Care Servs., LLC v. FGA, Inc.,* No. 13-cv-5390 (ILG)(CLP),
    2014 WL 4258992 (E.D.N.Y.  Aug.  27, 2014)………………………….…......33

*Fierro v.  Gallucci,* No.  06–CV–5189, 2008 WL 2039545 (E.D.N.Y.  May 12, 2008)………...42

*Frederiksen v. HR Textron, Inc.,* 484 F. App'x 610 (2d Cir. 2012)……………………….……..21

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.,* No.  19-CV-7007 (JPO),
    2020 WL 6323462 (S.D.N.Y.  Oct.  28, 2020)………………………………………………43

*Gordon v.  Dino De Laurentiis Corp.,* 141 A.D.2d 435 (1st Dep't 1988)……………………….34

*Gosain v. Texplas India Private Ltd.,* No.  09CV04172 (VM) (DF), 2019 WL 5722051
    (S.D.N.Y. Feb. 4, 2019), *report and recommendation adopted,* 393 F. Supp.  3d 368
    (S.D.N.Y.  2019)…………………………………………………………………………..14

*Grove Press, Inc.  v.  Angleton,* 649 F.2d 121 (2d Cir.1981)………………………………….42

*Gwynt Y Mor Ofto Plc v Gwynt Y Mor Offshore Wind Farm Ltd.* [2020] EWHC 850………....16

*Harsco Corp. v.  Segui,* 91 F.3d 337 (2d Cir.  1996)……………………………………………...39

*Health-Chem Corp. v.  Baker,* 915 F.2d 805 (2d Cir. 1990)……………………………...31, 32

*Hecht v.  Commerce Clearing House, Inc.,* 897 F.2d 21 n.  4 (2d Cir.1990)…………………..42

*In re Vasu v. Tremont Advisors, Inc.,* 129 F. Supp.  2d 113 (D.  Conn. 2001)……………..…….12

*Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146 (2d Cir.1995)……………16, 41

*Int'l Design Concepts, LLC v.  Saks In*c., 486 F. Supp. 2d 229 (S.D.N.Y. 2007)………………15

*Jones v.  Bock,* 549 U.S.  199 (2007)………………………………………………………...12

*Jones film v.  Lion Gate Int'l,* 299 F.3d 134 (2d Cir.  2002)……………………………………26

*Katz v. Donna Karan Co., L.L.C.,* 872 F.3d 114 (2d Cir. 2017)………………………………12

*Kavowras v. New York Times Co.,* 328 F.3d 50 (2d Cir. 2003)………………………………10

*Kirch v. Liberty Media Corp.,* 449 F.3d 388 (2d Cir.  2006)……………………...…………43, 44

*Lamesa Investments Ltd. v Cynergy Bank Ltd.* [2020] EWCA Civ 821………………………..16

*LVAR, L.P.  v.  Bermuda Com.  Bank Ltd.,* 649 F.  App'x 25 (2d Cir.  2016)………………….21

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.,* 157 F.3d 956 (2d Cir.1998)……………….……38

*Macondo's Profit Corp.  v.  Motorola Commc'ns & Elecs., Inc.,* 863 F.  Supp.  148
    (S.D.N.Y.  1994)………………………………………………………………….……….15

*Martinez v.  Bloomberg LP,* 740 F.3d 211 (2d Cir.  2014)……………………..…21, 22, 23, 25

*Mehrhof v.  Monroe-Woodbury Cent.  Sch.  Dist.,* 168 A.D.3d 713
    (N.Y.  App.  Div.  2019)……………………………………………………………….44

*Memnon v. Clifford Chance US, LLP,* 667 F.Supp.2d 334 (S.D.N.Y.2009)………..…….……44

*Merrill Lynch & Co.  Inc.  v.  Allegheny Energy, Inc.,* 500 F.3d 171 (2d Cir.  2007)………..….41

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.  Fine Host Corp.,* 418 F.3d 168
    (2d Cir. 2005)……………………………………………………………………..…………13

*Miller v.  Holtzbrinck Publishers, LLC,* No.  08 CIV 3508 (HB), 2009 WL 528620
    (S.D.N.Y.  Mar.  3, 2009), *aff'd sub nom.,* 377 F.  App'x 72 (2d Cir.  2010) ………..39, 40

*Motors Liquidation Co.,* 689 F. App'x 95 (2d Cir. 2017)………………………………..……15

*MRM Sec. Systems, Inc. v. Citibank, N.A.,* 1997 WL 198074 (S.D.N.Y. Apr. 23, 1997) …..6, 7, 8

*N.  Shipping Funds I, LLC v. Icon Cap.  Corp.,* 921 F.  Supp.  2d 94 (S.D.N.Y.  2013)….. 35, 37

*Nat'l Mkt.  Share, Inc.  v.  Sterling Nat'l Bank,* 392 F.3d 520 (2d Cir.  2004)…………..……33

*Nicholas v.  Trump,* 433 F.  Supp.  3d 581 (S.D.N.Y.  2020)…………………………..………12

*Orix Credit Alliance, Inc. v. R.E. Hable Co.,* 256 A.D.2d 114 (N.Y.  App.  Div.  1998)………..40

*Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir.  2015)…………………………………...33

*Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 138 A.D.3d 570
     (2016)…………………………………………………………...……...34
*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007)…………………………………21, 22
*Pitcock v. Kasowitz, Benson, Torres & Friedman LLP*, 74 A.D.3d 613 (1st Dep't 2010)……. ..34
*PKG Grp., LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006)……...45
*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003)…………………...24
*Roberts v. Health & Hosps. Corp.*, 87 A.D.3d 311, 928 N.Y.S.2d 236 (2011)……………....14
*S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)……………………………………...…21
*S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705 (2d Cir. 2010)……………………….…..22
*Scottsdale Ins. Co. v. Jian Li Structure, Inc.*, No. 18-CV-1744-PKC-SJB,
     2020 WL 5622201 (E.D.N.Y. Aug. 28, 2020)…………………………………………..…20
*Senior Health Insur. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp.3d 515
     (S.D.N.Y. 2018)…………………………………………………………………...……43
*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010)……………………….………13
*Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432
     (S.D.N.Y. 2008)……………………………………………………………………...……39, 40
*Trahan v. Lazar*, 457 F. Supp. 3d 323 (S.D.N.Y. 2020)……………………………...…………41
*Trendtex Trading Corp. v. Credit Suisse* (1982) A.C. 679, 680-81 HL…………….………....14
*Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236
     (S.D.N.Y. 2014)…………………………………………………………………...……35, 38
*Vasiliow Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 345 (E.D.N.Y. 1987)….……..…………..15
*Whitmore v. Arkansas*, 495 U.S. 149 (1990) …………………………………………….……...11
*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) …………………….……....37

**Statutes**

§ 136 of the Law of Property Act 1925………………………………………….…………………14
28 U.S.C. § 1602…..………………………………………………………………..…………30
Foreign Sovereign Immunity Act…………………………………………………………………30
N.Y. Gen. Oblig. Law § 13-101…………………………………………………………………....15

## I.     INTRODUCTION

This action is an extreme example of seller's remorse and stems exclusively from Plaintiff's frustration with the outcome of its decision to sell its assets to a third-but necessary party: Inflexion Private Equity Partners LLP ("Inflexion").[1]  After months of detailed and contested negotiations, Plaintiff knowingly and voluntarily agreed to sell its assets under a thorough and detailed contract (the "Business Purchase Agreement" or "BPA").  Both Plaintiff and Inflexion are sophisticated parties and were represented by counsel throughout the process. Indeed, the same counsel representing Plaintiff in this action represented Plaintiff in the transaction.  However, because the forum selection clause of the BPA precludes Plaintiff from suing Inflexion in the United States, Plaintiff is trying to make an end-run around the agreement by filing baseless claims against Mr. Moulding in his role as the Plaintiff's former Chief Executive Officer; if it is upset with the transaction, it's remedy is to raise those claims against Inflexion in the courts of England and Wales as required by the BPA.

Notwithstanding Plaintiff's conclusory assertions that this action is now really based on Mr. Moulding's conduct alone and relates only to his Employment Agreement with Plaintiff, the content of the Amended Complaint tells a different story.  Indeed, Plaintiff's claims are founded primarily on alleged conduct by *Inflexion*, a necessary party, and arise entirely out of the BPA, its subject matter, the negotiations leading thereto, and related non-contractual obligations.  This remains true now even after Plaintiff had over a month to analyze the arguments in Defendant's original Motion to Dismiss (ECF 18 & 19) and amend its original complaint in a futile effort to save its claims from being dismissed.  The revised allegations do nothing, however, to cure the

---

[1] The ultimate buyer of Plaintiff's assets was Pharmaspectra Group Ltd. ("Pharmaspectra Group"), which Plaintiff alleges is owned by Inflexion Enterprise Fund IV, which fund it alleges is advised and managed by Inflexion.

deficiencies; indeed, no amount of revising could save Plaintiff's claims because the defects in Plaintiff's case are intrinsic and incurable.  For a host of reasons, this Court should dismiss Plaintiff's Amended Complaint in its entirety.

First, Plaintiff's Amended Complaint must be dismissed for lack of standing because Plaintiff assigned away its right to bring such claims when it sold its assets, leaving this Court or any other court without subject matter jurisdiction or standing over Plaintiff's claims.

Second, because Plaintiff agreed in the BPA's forum selection clause to submit to the exclusive jurisdiction of the courts of England and Wales, neither this Court nor the New York State Court in which this action was originally filed are a proper forum for this action. Moreover, both the public and private interest factors of the *forum non conveniens* test weigh heavily in favor of this matter being heard in England.  Among other reasons, the parties agreed that the BPA is governed by and construed in accordance with English law and there is little to no nexus between Plaintiff's claims and the State of New York, especially because Plaintiff does not conduct business in New York, has a principal place of business in California, and its sole member is a resident of California too.  As such, Plaintiff's Amended Complaint should be dismissed based on *forum non conveniens* grounds.

Third, Pharmaspectra Group and Inflexion are necessary and indispensable parties to this action, and Plaintiff's Amended Complaint must be dismissed because of its failure to join them.

Fourth, Plaintiff's existence as a Delaware limited liability company was previously voided by the Delaware Secretary of State and its authority to do business as a limited liability company in the State of New York is suspended.  As such, Plaintiff did not exist at the time of filing this action and is currently without authority to maintain this action.

Lastly, for reasons to be explained more fully herein, Plaintiff has failed to state a claim upon which relief can be granted in seven counts of its Amended Complaint.

## II.    RELEVANT FACTS[2] AND PROCEDURAL HISTORY

### A.    Sale Of Plaintiff's Assets

Plaintiff was a global provider of medical affairs data to the pharmaceutical and biotech industry.  (Am. Compl. ¶ 14.) Mr. Mahesh Naithani is Plaintiff's principal and sole member.  (*Id.* at ¶¶ 13, 15.) In or around 2017, Plaintiff was contacted by multiple venture capital and private equity firms interested in acquiring a minority interest in Plaintiff.  (*Id.* at ¶ 15.) On September 7, 2018, Mr. Moulding entered into an employment agreement with Plaintiff and accepted Plaintiff's offer to become its Chief Executive Officer ("Employment Agreement").  (*Id.* at ¶ 27.) As of February 2019, Plaintiff was still receiving expressions of interest from third parties about purchasing a minority interest in the company.  (*Id.* at ¶ 39.) Plaintiff received pitches from eight to ten companies regarding the potential acquisition of a non-controlling interest in the company (*Id.* at ¶ 40.) Four venture capital firms expressed the strongest interest.  (*Id.* at ¶ 41.) Mr. Moulding, as CEO of Plaintiff, originated and introduced the venture capital firms to Plaintiff. (*Id.* at ¶ 42.) Mr. Moulding introduced Mr. Naithani to another potential investor, Inflexion, and informed Mr. Naithani that Inflexion was interested in purchasing a minority interest in Plaintiff. (*Id.* at ¶ 43.)

Plaintiff alleges that "[i]n discussions over a potential purchase of minority interest, *Inflexion* assured Plaintiff that it could close a transaction as quickly as within a month."  (*Id.* at ¶ 45) (emphasis added).  It further alleges that "in order to induce Plaintiff into accepting an offer,

---

[2] In moving to dismiss, Mr. Moulding assumes as true all non-conclusory allegations of the Amended Complaint and relies on undisputed information contained in the BPA, APA, Settlement Agreement, Employment Agreement, and the state filings, all attached as exhibits hereto, but reserves the right to challenge any and all factual allegations asserted by Plaintiff for any other purpose.

*Inflexion* made several presentations in which it presented three recent deals that it had closed in a month or less." (*Id.* at ¶ 46) (emphasis added).  Mr. Moulding originally told Plaintiff that Inflexion was interested in a minority interest, but he later told Plaintiff that Inflexion would not agree to a deal for less than a majority interest.  (*Id.* at ¶ 51.)

Plaintiff alleges that Mr. Moulding "repeatedly pressured Plaintiff in an attempt to force a decision that Inflexion was the best option as strategic buyer."  (*Id.* at ¶ 47.) It alleges that Mr. Moulding fed confidential information to Inflexion so that Inflexion could convince Plaintiff to agree to a transaction.  (*Id.* at ¶ 52.) It also alleges that Mr. Moulding "started constructing a deal with Inflexion to orchestrate better sales terms for Inflexion and an eventual loss for Plaintiff." (*Id.* at ¶ 75.)

On March 29, 2019, *Inflexion* issued a letter of intent "estimating Plaintiff's enterprise value at $100 [m]illion, and subsequently made an offer for purchase of $100 million."  (*Id.* at ¶ 57.) Plaintiff agreed to consider the offer.  (*Id.* at ¶ 61.) Plaintiff alleges that "*Inflexion* knowingly and repeatedly falsely promised, both verbally and in writing, that it could conduct a quick and efficient due diligence process and it would close the transaction within five weeks of executing the Letter of Intent."  (*Id.* at ¶ 66) (emphasis added).  Plaintiff alleges that Mr. Moulding "affirmed *Inflexion's* false representations." (*Id.* at ¶ 67) (emphasis added).  Based on the representations about Inflexion's ability to close quickly Plaintiff agreed to proceed with Inflexion as the buyer and then subsequently entered into an Exclusivity Agreement with Inflexion on April 7, 2019, which was subsequently extended twice through September 20, 2019. (*Id.* at ¶¶ 69, 80-83.)

In or around late September 2019, having completed its due diligence for nearly six months, Inflexion presented new terms for the transaction, which included a $52 million

4

purchase plus an earn-out based on Plaintiff achieving certain revenue milestones for the

remainder of 2019 and the first half of 2020.  (*Id.* at ¶ 85.) Plaintiff agreed to the earn-out

concept proposed by Inflexion.  (*Id.* at ¶ 90.)

**B.     The Terms Of The Agreements**

**1.     The Business Purchase Agreement**

On October 4, 2019, the sale of Plaintiff's assets was consummated through two different

agreements: the Business Purchase Agreement ("BPA") (relevant excerpts of which are attached

as Exhibit A to Exhibit 1, Declaration of Jeremy Moulding In Support of Jeremy Moulding's

Motion to Dismiss Plaintiff's Complaint ("Moulding Decl.") and the Asset Purchase Agreement

("APA") (relevant excerpts of which are attached hereto as Exhibit B to the Moulding Decl.).[3]

"As part of the BPA and APA, Plaintiff transferred its business and assets to Inflexion."  (Am.

Compl.  ¶ 95.) Specifically, under the terms of the BPA, Plaintiff, as one of the Sellers, sold,

transferred, and assigned to Pharmaspectra Group substantially all of the Plaintiff's assets, with

the exception of certain specifically excluded assets defined in the agreement and a subset of

other assets purchased by Pharmaspectra US LLC ("US Buyer") under the APA.  (Moulding

Decl., Exhibit A at p.1 and §§ 2.1, 2.2).  Specifically, § 2.1 of the BPA provides:

> The Sellers shall sell, transfer and assign and the Buyer shall purchase and assume (i) the
> Business as a going concern and (ii) the Assets as at, and with effect from, the Transfer
> Time, and except as expressly provided in this Agreement the Buyer shall assume, pay,
> perform and discharge any and all liabilities and obligations of the Sellers arising out of

---

[3] The Moulding Declaration is now submitted in support of the instant Motion to Dismiss the Amended Complaint. The BPA, APA, and the Settlement Agreement, are all appropriate for consideration by the Court in the context of ruling on all aspects of instant Motion to Dismiss.  *See Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)) ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits."); *Fagioli S.p.A. v. Gen. Elec. Co.*, No. 14-CV-7055 (AJN), 2015 WL 3540848, at *3 (S.D.N.Y. June 5, 2015) ("When reviewing a motion to dismiss under Rule 12(b)(7) [for failure to join an indispensable party], the Court may consider documents and facts outside the pleadings."); *see also infra* Section III(A).  "To the extent that the written document contradicts the allegations in the complaint, the former controls."  *Cohen v. Acorn Int'l Ltd.*, 944 F. Supp. 204, 207 (S.D.N.Y. 1996); *MRM Sec. Systems, Inc. v. Citibank, N.A.*, 1997 WL 198074, n.1 (S.D.N.Y. Apr. 23, 1997) ("Where there is a discrepancy between the allegations made in a pleading and the documents incorporated therein, the documents themselves take precedence over the plaintiff's characterization of them.").

or relating to the Business or Assets on or after the Transfer Time.  The Sellers shall sell the Business and each of the Assets with full title guarantee and free from all Security Interests except that the Contracts shall be sold and transferred in accordance with the provisions of clause 11.

(Moulding Decl., Exhibit A at § 2.1.) In the BPA:

- "Assets" are defined as "the property, assets and *rights* of the Sellers listed in clause 2.2 to be sold and purchased pursuant to this Agreement, other than the Excluded Assets." (*Id.* at p. 2) (emphasis added).

- "Business" is defined as the "business of collating, quantifying and/or analysing medical data and literature in connection with the provision of the Products, services and solutions to the healthcare sector as carried on by the Sellers at the Transfer Time."  (*Id.*) Section 2.2 of the BPA sets forth the following comprehensive list of the transferred assets: "the Goodwill; . . . the Plant and Machinery; . . . the Fixtures and Fittings; . . . the benefit (subject to the burden) of the Contracts; . . . the Intellectual Property Rights; . . . *the benefit of all Claims*;  . . . the Records; . . . [and] *all other assets, property or rights of the Sellers which are used in or relate to the Business* as at the Transfer Time." (*Id.* at § 2.2) (emphasis added).

  Again, in the definitions section of the BPA:

- "Claims" are defined as: [T]he benefit of *all rights and claims which the Sellers have against third parties relating to the Assets and the Business*, including, but not limited to, all manufacturers' and suppliers' warranties and representations and all rights against insurers in respect of any policies effected by the Sellers in connection with the Assets and the Business.  (*Id.* at § 1.1, p.3) (emphasis added).

- "Excluded Assets" are defined as those listed in Schedule 2 of the BPA, which schedule does not list any asset, right, claim, or benefit relate in any way to the claims that Plaintiff has raised in this action.  (*Id.* at § 1.1, p. 5, Sch. 2.)

  Another key section of the BPA, Section 8.5 provides:

  The *Warrantors agree* with the Buyer (for itself and as trustee for the Transferring Employee, the *Offered Employees (as such term is defined in the [APA])* and the Transferred Employees (as such term is defined in the India Asset Purchase Agreement)), in each case, who are employed by a member of the Buyer's Group simultaneously with the Completion, *to waive any claim or remedy or right which it may have in respect of any misrepresentation, inaccuracy or omission in or from any information or advice supplied or given by such employee for the purpose of assisting the Warrantors in giving any warranty, representation, undertaking or covenant, in preparing the Disclosure Letter and in entering into this Agreement, or any agreement or document entered into pursuant to this Agreement.*

(*Id*. at § 8.5) (emphasis added).  Mr. Moulding is defined as an "Offered Employee" under the

APA.  The "Warrantors" are defined in the BPA to include Plaintiff.  (*Id*. at § 1.1, p. 9.)

In the BPA, the parties, including Plaintiff, also agreed to the following choice of law

provision and exclusive forum selection clause:

1.1 The parties agree that this Agreement and any dispute or claim arising out of or in
    connection with this Agreement, its negotiation or its subject matter, or any
    noncontractual obligation arising in connection with the foregoing, shall be governed by
    and construed in accordance with English law.

1.2 Each of the parties irrevocably agrees to submit to the exclusive jurisdiction of the courts
    of England and Wales in relation to any claim or matter arising out of or in connection
    with this Agreement, its negotiation or its subject matter, or any non-contractual
    obligation arising in connection with the foregoing.

(*Id*. at § 28.)

## 2.       The Asset Purchase Agreement

Under the terms of the APA, Plaintiff sold, conveyed, assigned, transferred, and delivered

to the US Buyer and US Buyer purchased "free and clear of Encumbrances, all right, title and

interest in and to" the following other assets of the Plaintiff: 1) four assumed contracts listed in

Schedule 1.2(a)(i) of the APA; 2) all inventory located in the United States; 3) all tangible

property (equipment) set forth in Schedule 1.2(a)(iii) of the APA; 4) copies of all books and

records related to the Purchased Assets; 5) all prepaid assets and prepaid expenses set forth in

Schedule 1.2(a)(v) of the APA; 6) all permits set forth on Schedule 1.2(a)(vi) of the APA; and 7)

personnel records for certain employees that accepted US Buyer's offer of employment.

(Moulding Decl., Exhibit B at § 1.2(a).) The APA specifically excludes any other assets, rights

or properties of the Sellers, and provides that the only assets that would remain the property of

the Sellers (including the Plaintiff) after closing were the Excluded Assets that were not part of

the assets sold under the BPA.  The APA then lists three excluded assets: 1) the Excluded Assets

as defined in the BPA; 2) a New Jersey lease; and 3) a New York lease.  (*Id.* at § 1.2(b).)

A.      The "Equity Incentive Payment"

In connection with the transaction, Mr. Moulding received a payment from Plaintiff in the amount of $2,625,923.00 (defined by Plaintiff in the Amended Complaint as an "Equity Incentive Payment").  (Am. Compl. ¶ 116.) In the Amended Complaint, Plaintiff alleges that the Equity Incentive Payment "was calculated in anticipation of the Plaintiff earning certain additional payments upon the business reaching specific targets post-closing" and that it "was at the sole discretion of Mr. Naithani, and made conditional under the contract upon Defendant's anticipated contribution to help Pharmaspectra meet the agreed upon post-closing revenue targets."  (*Id.* at ¶¶ 117-118, 150.) Plaintiff claims that the amount of the Equity Incentive Payment "exceeds the amount to which Defendant is actually entitled by an amount of . . . $1,135,833.97 . . . .", which amount Plaintiff asked Mr. Moulding to return. (*Id.* at ¶¶ 125-126.) Mr.  Moulding declined to do so.  (*Id.* at ¶ 127.)

However, Plaintiff made the Equity Incentive Payment pursuant to a "Confidential Settlement Agreement and General Release" with Mr. Moulding ("Settlement Agreement")[4]; that agreement was a closing deliverable required by the APA.  (Moulding Decl., Ex. B at § 1.6(a)(vi).) Section 2 of the Settlement Agreement provides:

> *Regardless of whether you sign this Agreement*, you will receive *your final pay* including accrued and unused vacation and all outstanding amounts due and payable as of the Separation Date, as set forth on Exhibit A hereto, *which represents the complete and final amounts owed to you by the Employer*.

(*Id*. at Settlement Agreement, § 2) (emphasis added).  Exhibit A to the Settlement Agreement specifies Mr. Moulding's Employee Compensation Details in a chart that lists the Equity

---

[4] The Court may properly consider the Settlement Agreement for purposes of this Motion to Dismiss for the reasons explained in Footnote 3. *See supra* Note 3.

Incentive Payment and describes it as "Additional items (including but not limited to transaction related bonuses)".  (*Id.* at Settlement Agreement, Ex.  A.)

Further, it states:

> Your Employment Agreement with [the Plaintiff], dated September 7, 2018, *is superseded and terminated by this Agreement* (including for the avoidance of doubt any right to receive payment in connection with the proposed sale and purchase of the business and assets by [the Plaintiff] to [the US Buyer] and/or [Pharmaspectra Group] or other transaction related bonus) with the exception of your post-termination obligations . . . .

(*Id.*, § 3) (emphasis added).  It further provides that "[t]his Agreement is the complete understanding between you and the [Plaintiff].  *It replaces any other agreements, representation or promises, written or oral.*"[5]  (*Id.* § 19) (emphasis added).

### B.    Post-Closing Earn-Out Targets

Plaintiff alleges that the revenue targets for the proposed earn out "were established in collaboration with the Defendant and Pharmaspectra [Group] and advised by Defendant to be reasonable and achievable."  (Am.  Compl. ¶ 123.) On October 7, 2019, Mr. Moulding, Inflexion, and the other parties "attempted to collaborate to ensure that the 2019 earn-out targets were met."  (*Id.* at ¶ 103.) Plaintiff alleges that from October 31 to December 23, 2019, *Inflexion* delayed and ultimately refused to enter into an agreement that would have allowed Plaintiff and Inflexion to meet the earn-out targets.  (*Id.* at ¶ 115.) However, Pharmaspectra Group ultimately was not able to meet the post-closing revenue targets.  (*Id.* at ¶ 151.)

### C.    Changes to Plaintiff's Status in Delaware and New York

---

[5] Similarly, Section 24 of the BPA provides that the BPA "and any agreement or document entered into pursuant to [the BPA] constitutes the entire agreement between the parties and supersedes any previous agreement or arrangement between the parties or any of them relating to the sale and purchase of the Assets. (Moulding Decl., Exhibit A at § 24.)

9

Plaintiff's name was changed from Pharmaspectra LLC to PS US LLC on October 9, 2019.  (*See* Certified Copy of Del.  Cert. of Amendment, Ex. 2.) On March 10, 2020, Plaintiff's former registered agent for service resigned.  (*See* Certified Copy of State of Del.  Cert. of Resignation of Registered Agent without Appt. of a Successor Registered Agent, Ex.  3.) On April 9, 2020, the Delaware Secretary of State voided Plaintiff's existence for failure to appoint a new registered agent within 30 days by virtue of § 18-104(d) of the Delaware LLC Act. Plaintiff's registered agent in New York resigned on October 14, 2020 (*See* Certified Copy of Certificate of Resignation of Registered Agent, Ex.  4.) On November 16, 2020, the New York State Department of State filed a Certificate of Resignation for Receipt of Process of PS US LLC, triggering a suspension of Plaintiff's authority to do business in the State of New York. (*See* Certified Copy of "Certificate of Resignation for Receipt of Process of PS US LLC," Ex. 5.)[6]  Plaintiff currently maintains its principal place of business in California, where its sole member Mahesh Naithani resides and is a citizen.  (*See* Am. Compl. ¶¶ 5-6.)

### D.    Procedural History

On October 6, 2020, Plaintiff filed its original Complaint in the Supreme Court of the State of New York, County of New York under the caption *PS US LLC, formerly known as Pharmaspectra, LLC v. Jeremy Moulding*, Index No.  655039-20 (the "State Court Action").  In the Amended Complaint, Plaintiff alleges that its act of bringing this action is permitted under the terms of the Employment Agreement.  (Compl.  at ¶ 128.) Plaintiff alleges eight counts against Mr.  Moulding: 1) breach of the Employment Agreement;[7] 2) breach of fiduciary duty; 3)

---

[6] The Court may consider the state filings attached as exhibits for purposes of the motion under Rule 12(b)(1) for the reasons noted in Footnote 3 and Section III(A).  To the extent needed, the court may also refer to these filings for purposes of the motion under Rule 12(b)(6) because "[j]udicial notice may be taken of public filings . . . ." *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003).

[7] In its declaratory judgment claim, Plaintiff alleges that there is an unsatisfied tax claim resulting from Mr. Moulding's employment in the amount of $509,002.85.  (Am. Compl. ¶ 194.)  Plaintiff alleges that Mr. Moulding disputes that he owes the tax and has refused to satisfy it, which refusal Plaintiff claims is a breach of Mr.

unjust enrichment; 4) fraudulent misrepresentation and inducement; 5) civil conspiracy; 6) two counts of tortious interference with prospective economic advantage; and 7) a declaratory judgment claim regarding tax liability.  On February 5, 2021, Defendant removed the case in a timely basis to this Court due to diversity jurisdiction.

On March 15, 2021, Defendant filed a Motion to Dismiss Plaintiff's original Complaint. (*See* ECF 18-20.) Following an initial conference with the Court on March 26, 2021, the Court ordered Plaintiff to either oppose Defendant's Motion to Dismiss or amend Plaintiff's original Complaint by April 23, 2021.  (ECF 24.) On April 23, 2021, after having had over a month to analyze the arguments in Defendant's motion to dismiss, Plaintiff filed an Amended Complaint in an effort to save its claims from being dismissed.  (ECF 25.) For the reasons explained herein, Plaintiff's effort has failed.

## III.    MOTION TO DISMISS STANDARD

### A.    Dismissal for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1).

"'It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.'"  *Digizip.com, Inc. v. Verizon Servs. Corp.*, No. 14 CIV. 1741 (GWG), 2015 WL 1283676, at *2 (S.D.N.Y. Mar.  20, 2015) (quoting *Whitmore v.  Arkansas,* 495 U.S. 149, 154 (1990)). "Rule 12(b)(1) permits a party to move to dismiss a complaint for lack of subject-matter jurisdiction…A case is properly dismissed for lack of subject matter jurisdiction under

---

Moulding's employment agreement under which he agreed to be liable for taxes associated with his employment by Plaintiff. (*Id.* at ¶¶ 188-89, 195.)    Plaintiff alleges that the unsatisfied tax is part of unpaid taxes that are owed by another entity, M3 Cubed UK Limited ("M3 Cubed").  (*Id.* at ¶ 198.)  Plaintiff alleges that "[t]he United Kingdom taxing authorities *may* now proceed to seek" the unsatisfied tax claim from M3 Cubed and "*may* ultimately seek to have Plaintiff, as an affiliate of M3 Cubed, or Plaintiff's principal [Mahesh Naithani] satisfy any such tax obligations," the liability for which Plaintiff and its principal dispute.  (*Id.* at 197, 200) (emphasis added).  Plaintiff seeks a declaratory judgment requiring Mr. Moulding to indemnify Plaintiff as to liability for the amount of unsatisfied tax claim as "*may* be found to be owed by Plaintiff".  (*Id.* at ¶ 202) (emphasis added.)

Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."
Nicholas v. Trump, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020).

"[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering
evidence beyond the complaint and its exhibits." *Id.* "In opposition to such a motion, [a
Plaintiff] must come forward with evidence of their own to controvert that presented by the
defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by
the defendant is immaterial because it does not contradict plausible allegations that are
themselves sufficient to show standing." *Id.* at 586-87 (quoting *Katz v. Donna Karan Co., L.L.C.*,
872 F.3d 114, 119 (2d Cir. 2017)). "If a defendant supports his fact-based Rule 12(b)(1) motion
with material and controverted extrinsic evidence, a district court will need to make findings of
fact in aid of its decision as to subject matter jurisdiction." *Id.* at 587 (internal quotation marks
omitted). If a court determines that it lacks subject-matter jurisdiction, it must dismiss the action.
*See* FED. R. CIV. P. 12(h)(3).

### B.     Dismissal for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests whether a
pleading alleges a legally viable claim, and should be granted if "the allegations, taken as true,
show the Plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). The Court
need not, however, accept as true all allegations contained in a complaint. *See Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009); *see also in re Vasu v. Tremont Advisors, Inc.*, 129 F. Supp. 2d 113,
116 (D. Conn. 2001) ("Bald and unsupported assertions and conclusions of law . . . will not
defeat a motion to dismiss"). "Generally, '[w]hile a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide
the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do.'" *Starr v. Sony BMG Music*

*Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### C. Dismissal For Failure To Join A Party Under Rule 19 Pursuant To Fed. R. Civ. P. 12(b)(7)

"[T]he burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." *Fagioli S.p.A.*, 2015 WL 3540848, at *3. "To discharge this burden, it may be necessary to present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence. The district judge is not limited to the pleadings." *Id.*

## IV. ARGUMENT

### A. Plaintiff's Claims Should be Dismissed For Lack of Standing

"Where . . . jurisdiction is predicated on diversity of citizenship, a Plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*, 418 F.3d 168, 173 (2d Cir. 2005). "Standing is an essential component of the case-or-controversy requirement of Article III of the Constitution. . . . To satisfy Article III's standing requirements, a plaintiff must show an injury in fact (1) that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) that is fairly traceable to the challenged action of

the defendant; and (3) that is likely to be redressed by a favorable decision." *Gosain v. Texplas*

*India Private Ltd.*, No.  09CV04172 (VM) (DF), 2019 WL 5722051, at *5 (S.D.N.Y. Feb. 4,

2019), *report and recommendation adopted,* 393 F. Supp.  3d 368 (S.D.N.Y.  2019).  "[T]he

injury must affect the Plaintiff in a personal and individual way."  *Id.* "The party invoking

federal jurisdiction bears the burden of establishing the elements of standing 'for each claim and

form of relief sought.'" *Id.* (quoting *Carver v.  City of New York*, 621 F.3d 221, 225 (2d Cir.

2010)).  "Further, a Plaintiff must have standing at the time a lawsuit is filed."  *Id.*

        "Whether a person seeking relief from a court is a proper party to request an adjudication

is an aspect of justiciability which must be considered at the outset of any litigation.  . . .

Standing is thus a threshold determination that allows a litigant access to the courts to adjudicate

the merits of a particular dispute that otherwise satisfies the other justiciability criteria."  *Roberts*

*v. Health & Hosps. Corp.*, 87 A.D.3d 311, 318 (2011) (citation and internal quotation marks

omitted).

> **1.      Plaintiff Lacks Standing Because It Assigned Away Its Right To Bring The Claims Raised in the Amended Complaint When It Sold Its Assets To Pharmaspectra Group.**

        Plaintiff's claims must be dismissed for lack of standing because Plaintiff sold,

transferred, and assigned the right to bring the claims in this action to Pharmaspectra Group

under the BPA.  "An unequivocal and complete assignment extinguishes the assignor's rights

against the obligor and leaves the assignor without standing to sue the obligor."[8]  *Digizip.com,*

---

[8] As explained in Section IV(B), this matter should be dismissed.  The parties agreed that English law governs disputes like this one that arise from the BPA, its subject matter, and the negotiations leading thereto.  Under English law, plaintiff assigned away the right to bring the claims it has raised in the Amended Complaint when it sold its assets under the BPA.  *See Trendtex Trading Corp. v. Credit Suisse* (1982) A.C. 679, 680-81 HL (under English law, the right to bring a claim or cause of action can be assigned as part of a transfer of property to which the cause of action relates, provided that the recipient or assignee has a genuine commercial interest in taking the assignment); *see also* § 136 of the Law of Property Act 1925 (assignee is considered the sole owner of an assigned

*Inc.*, 2015 WL 1283676, at *8 (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,* 731 F.2d 112, 125 (2d Cir.1984)); *see In re: Motors Liquidation Co.*, No. 15-CV-9971 (JMF), 2016 WL 3461359, at *2 (S.D.N.Y. June 21, 2016) ("unequivocal and complete assignment extinguishe[d]" all of [Plaintiff's] interests in the bankruptcy case and left her 'without standing to sue.'"), *aff'd sub nom. Matter of Motors Liquidation Co.*, 689 F. App'x 95 (2d Cir. 2017); *see also Macondo's Profit Corp. v. Motorola Commc'ns & Elecs., Inc.*, 863 F. Supp. 148, 149 (S.D.N.Y. 1994) (similar); *Vasilow Co. v. Anheuser-Busch, Inc.*, 117 F.R.D. 345, 347 (E.D.N.Y. 1987) (dismissing lead Plaintiff as a party Plaintiff from proposed class action for lack of standing because Plaintiff's claim for damages had been sold along with the rest of Plaintiff's corporate assets in contract of sale that sold all of Plaintiff's business assets and did not exempt Plaintiff's claim or any other cause of action from sale).

> New York's statute governing the assignment of claims provides that '*[a]ny* claim . . . can be transferred,' with certain exceptions not relevant here. *See* N.Y. Gen. Oblig. Law § 13-101. The owner of the claim need not use a particular form of assignment. . . . However, the assignor must manifest an intention to make the assignee the owner of the claim. . . . Any act or words are sufficient which show an intention to transfer all rights to the assignee.

*Digizip.com, Inc.*, 2015 WL 1283676, at *3 (emphasis added; internal quotation marks omitted); *see also Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 236 (S.D.N.Y. 2007) ("With limited exceptions not applicable here, New York permits the assignment of tort claims. . . . No specific language is required in order to transfer a tort cause of action.").

---

cause of action upon the completion of a legal assignment, which is valid when 1) it is absolute (i.e., unconditional); 2) does not purport to be by way of charge only; 3) the right to be assigned is wholly ascertainable and doesn't relate to only part of a debt or other legal cause of action; 4) the assignment is in writing and signed by the assignor; and 5) the other party to the claim is given notice of the assignment.). For the convenience of the Court, Defendant has briefed this issue under the laws of the State of New York. In so doing, Defendant does not waive his right to have this matter resolved by the Courts of England and Wales pursuant to English law and expressly reserves the right to do so.

"[F]raud claims are freely assignable in New York," provided that there is "some expressed intent or reference to tort causes of action, or *some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims*, in order to effectuate such an assignment."[9] *Commonwealth of Pennsylvania Pub.  Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 550-51 (2015) (emphasis added); *compare Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citing "general trend in New York toward adopting principles of free assignability of claims, including those of fraud" and concluding that broad language transferring "*all . . . rights, title and interest in the transaction*" described in the agreement was broader than an interest in the contract alone and would be deemed by the New York Court of Appeals to be "sufficient to effect the assign of tort claims based on fraud") (emphasis added) *and Int'l Design Concepts*, 486 F.  Supp.  2d at 237 (assignment of "all assets" of assignor broad enough to encompass all causes of action owned by assignor, including fraud claim) *with Morgan Stanley & Co.*, 25 N.Y.3d at 550-52 (concluding that sale of notes failed to effectuate assignment of fraud claim when there was a complete absence of any expression of a contemporaneous intent to transfer related tort claims).

In *Digizip.com*, the plaintiff, Digizip.com, Inc., sued the defendant, Verizon Services Corp. for breach of contract and unjust enrichment arising from alleged overpayments of certain surcharges and taxes by Digizip to Verizon from which Digizip claimed it was exempt.

---

[9] Under New York law, the Court must interpret the contract based on the intent of the parties, using the plain meaning of the language in the contract without reference to extrinsic or parol evidence so long as the document itself is unambiguous.  *Digizip.com, Inc.*, 2015 WL 1283676, at *3 (citing New York appellate authority for New York's standard on contract interpretation).  Under English law, "the text of the contract has particular and potentially decisive weight in relation to a contract"; *Gwynt Y Mor Ofto Plc v Gwynt Y Mor Offshore Wind Farm Ltd.* [2020] EWHC 850 (Comm)); and any subjective evidence of the parties' intentions will be disregarded.  *Arnold v Britton* [2015] UKSC 36; [2015] AC 1619.  "Sophisticated, complex agreements drafted by skilled professionals are likely to be interpreted principally by textual analysis unless a provision lacks clarity or is apparently illogical or incoherent." *Lamesa Investments Ltd. v Cynergy Bank Ltd*. [2020] EWCA Civ 821.  (Copies of the aforementioned English law cases in Footnotes 8 and 9 are attached hereto as Exhibit 6.)

*Digizip.com, Inc.*, 2015 WL 1283676, at *1.  Prior to bringing the lawsuit, Digizip sold its

business two years earlier through a transfer of assets to a nonparty company, WCS.  *Id.* at *3.

The Purchase and Sale Agreement under which the sale was completed provided that: "Seller

shall sell, convey, transfer, assign, and deliver to Purchaser, and Purchaser shall purchase,

acquire, and accept from Seller all of the right, title, and interest of Seller in and to the Acquired

Assets."  *Id.* at *4.  The phrase "Acquired Assets" was defined in the Agreement as:

> Assigned Contracts, Company Assets, Equipment and Machinery, Files and
> Records, Intangible Assets, Intellectual Property, Licenses and Permits, Prepaid
> Expenses, Warranties and all other assets of Seller as of the Closing Date . . . of
> every kind, nature, character, and description, whether real, personal or mixed,
> whether accrued, contingent or other, and wherever situated, and whether or not
> reflected in any financial statement of Seller.

*Id.*  Verizon moved to dismiss Digizip's claims arguing that Digizip lacked standing because it

assigned away its right to bring the claims at issue when it sold its assets to WCS.  *Id.* at *3.  The

*Digizip* court agreed.  *Id.* at *8.  The court concluded that, even though there was "unrefuted

evidence that the overpayments at issue were unknown to Digizip at the time of the asset sale,"

> given the broadness of the definition of the assets that were acquired by WCS,
> with its reference to the sale of 'all' assets of Digizip, its inclusion of assets 'of
> every kind, nature, character and description,' and its inclusion of assets that are
> 'accrued, contingent or other,' we do not see a basis for finding that even a right
> to sue that was unknown to Digizip was not included in this definition.  Indeed,
> Digizip's briefs contain no argument at all that this definition, when read in
> isolation and without reference to any extrinsic evidence, fails to transfer
> Digizip's claims against Verizon here.  Thus, we conclude that the text of this
> definition reflects the intent of the parties to effectuate the assignment of all
> claims that might arise under the Service Agreements, including those that were
> unknown to the parties at that time.

*Id.* at *4.

This case is nearly identical.  Here, Plaintiff unequivocally and completely assigned its

right to bring the claims raised in the Amended Complaint when it sold, transferred, and assigned

substantially all of its assets to Pharmaspectra Group.  In particular, among the transferred assets,

17

the parties specifically listed "the benefit of *all* Claims"—which were broadly defined as "the benefit of *all* rights and claims which the Sellers have against third parties relating to the Assets and the Business . . . ."  (Moulding Decl., Exhibit A at § 1.1, p.3, § 2.2.7.) (emphasis added). This language is direct and unambiguous evidence of the parties' intent that Plaintiff transfer broad and unlimited rights and claims related to the Assets and the Business.  That includes the rights and claims found in Plaintiff's Amended Complaint, whether they be contract- or tort-based.  *See Morgan Stanley & Co.*, 25 N.Y.3d at 551.[10]  This language is substantially similar to the broad language examined and found to evince an intent to assign the claims at issue in *Digizip.com*, *Banque Arabe*, and *Int'l Design Concepts.*  2015 WL 1283676, at *4; 57 F.3d at 153; 486 F. Supp. 2d at 237.

Accordingly, the plain language of the BPA demonstrates that the parties intended to assign Plaintiff's right to bring claims, such as the ones it has raised here, against Mr. Moulding. *See Digizip.com, Inc.*, 2015 WL 1283676, at *3 (courts must ascertain intent of parties from plain language of agreement rather than extrinsic evidence when document is unambiguous).[11] In so doing, Plaintiff extinguished any rights it may have had against Mr. Moulding as a third party, leaving Plaintiff without standing—under either Article III of the Constitution or New York state standing law—to bring the claims in the Amended Complaint. *See id.* at *8.

---

[10] The parties also included the catch-all description of "*all other assets, property or rights of the Sellers which are used in or relate to the Business* as at the Transfer Time," which further indicates Plaintiff's intent to comprehensively convey all of its assets other than those specifically excluded by the terms of the agreement.

[11] Plaintiff's after-the-fact conclusory allegation in the Amended Complaint that it somehow did not transfer claims arising under contracts other than the BPA or APA, such as the Employment Agreement or tort claims arising from duties independent of the BPA or APA, (*see* Am. Compl. ¶ 96), is extrinsic evidence that should not be considered by the Court in determining the intent of the parties, which the Court must ascertain from the unambiguous plain language of the BPA.  *See Digizip.com, Inc.*, 2015 WL 1283676, at *3.  However, even if the Court were to consider this particular allegation, it is directly contradicted by another allegation in which it admits that it "transferred its business and assets to Inflexion" and by the plain language of the BPA, which shows that any purported claims under the Employment Agreement and the tort claims Plaintiff has raised in the Amended Complaint were expressly subsumed in the broad definition of the Business and Assets that Plaintiff transferred to Pharmaspectra Group. Plaintiff cannot now undo the legal consequences of it decision to enter into the BPA or change the meaning of its unambiguous provisions with self-serving conclusory allegations in its Amended Complaint.

### 2. Plaintiff Also Lacks Standing To Bring The Claim Asserted In Count VIII Because There Is No Actual Justiciable Controversy.

In Count VIII, Plaintiff has asked the Court for a declaratory judgment regarding the parties' indemnity obligations related to an unsatisfied tax claim in the amount of $509,002.85 or "such other amount, if any, as *may be* found to be owed by Plaintiff to the United Kingdom tax authorities." (Compl. at ¶ 202.) (emphasis added). However, Plaintiff has not alleged why the tax is owed, that it actually paid the alleged tax claim, or that any liability for the tax claim has been imposed upon it, such that there would be anything to indemnify. Plaintiff has not even alleged the existence of a dispute between Plaintiff and the United Kingdom taxing authorities (or anyone else) in which anyone has even *claimed* that Plaintiff is liable for the alleged tax claim, let alone imposed liability for the claim. Instead, Plaintiff appears to allege that the unsatisfied tax claim is part of unpaid taxes that are owed by a third party, M3 Cubed, but the United Kingdom taxing authorities have not yet actually sought this amount from M3 Cubed. *See id.* at 200 ("[t]he United Kingdom taxing authorities *may* now proceed to seek" the unsatisfied tax claim from M3 Cubed) (emphasis added). Nonetheless, because the United Kingdom taxing authorities then "*may ultimately* seek to have Plaintiff, as an affiliate of M3 Cubed, or Plaintiff's principal satisfy any such tax obligations," the liability for which Plaintiff and its principal dispute, Plaintiff claims that an actual, justiciable controversy exists between the Plaintiff and Mr. Moulding. (*Id.* at 196-97, 200) (emphasis added.)

In other words, Plaintiff claims that, based on the hypothetical possibility that the United Kingdom tax authorities *may* pursue a third party (M3 Cubed) for its unpaid taxes and then *may ultimately* seek from Plaintiff payment for those taxes, which include a disputed unsatisfied tax claim for which Plaintiff and Mr. Moulding both disclaim liability, this Court should issue a declaration regarding the parties' indemnity obligations under the Employment Agreement. This

19

falls well short of the showing required to establish an actual justiciable controversy ripe for adjudication regarding indemnification obligations.  *See Scottsdale Ins. Co. v. Jian Li Structure, Inc.*, No.  18-CV-1744-PKC-SJB, 2020 WL 5622201, at *5-8 (E.D.N.Y. Aug. 28, 2020) (no live case or controversy when no pending underlying case against alleged indemnifier, noting that "courts generally decline to award declaratory relief in indemnification actions . . .  before any underlying suit has been filed.  .  .  .  Even when there is an underlying suit filed, claims involving indemnification obligations are not justiciable until liability has been imposed upon the party to be indemnified" unless no facts in controversy in the underlying litigation leaving no ripeness concerns) (internal quotation marks omitted).  As such, this Court must dismiss Count VIII.

### B.     The Amended Complaint Should Be Dismissed Based On The BPA's Forum Selection Clause and the Doctrine of Forum Non Conveniens

Plaintiff's Amended Complaint should be dismissed based on the BPA's forum selection clause and the doctrine of *forum non conveniens*.  "A freely negotiated forum-selection clause 'represents the parties' agreement as to the most proper forum' and 'should be given controlling weight in all but the most exceptional cases.'"  *Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 771 (2d Cir. 2020) (quoting *Atl. Marine Const. Co.  v.  U.S.  Dist. Court for W. Dist. of Texas*, 571 U.S.  49, 63 (2013)).[12]  "[T]he *forum non conveniens* analysis is altered where there is a valid forum-selection clause.  .  .  .  A 'plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.'"[13]  *LVAR,*

---

[12] "[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Const. Co.*, 571 U.S. at 60.

[13] Where there is no forum selection clause, courts must follow a three-step analysis to determine if dismissal for *forum non conveniens* is appropriate.  *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002).  That analysis includes: (1) determining the degree of deference properly accorded a Plaintiff's choice of forum; (2) considering whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; and (3)

*L.P. v. Bermuda Com. Bank Ltd.*, 649 F. App'x 25, 26 (2d Cir. 2016); *see also Martinez v. Bloomberg LP*, 740 F.3d 211, 218-19 (2d Cir. 2014) ("[F]orum selection clauses require a substantial modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.") (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 6, 15 (1972)).[14]

"A forum-selection clause is presumptively enforceable if it 'was reasonably communicated to the party resisting enforcement,' has 'mandatory force,' and 'covers the claims and parties involved in the dispute.'" *Du Quenoy*, 828 F. App'x at 771 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). "A party may overcome this presumption only 'by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Phillips*, 494 at 383–84 (internal quotation marks omitted)).

> Specifically, a forum-selection clause will not be enforced only if '(1) its
> incorporation was the result of fraud or overreaching; (2) the law to be applied in
> the selected forum is fundamentally unfair; (3) enforcement contravenes a strong
> public policy of the forum in which suit is brought; or (4) trial in the selected

---

balancing the private and public interests implicated in the choice of forum. *Id.* "When conducting the first step of this analysis to determine the appropriate level of deference accorded to a Plaintiff's choice of forum, a court may consider several factors: (1) whether the Plaintiff is a U.S. citizen; (2) convenience of the Plaintiff's residence in relation to the chosen forum; (3) availability of witnesses or other evidence to the forum; (4) defendant's amenability to suit in the forum; (5) availability of appropriate legal assistance; and (6) evidence of forum shopping to be subject to favorable law." *Frederiksson v. HR Textron, Inc.*, 484 F. App'x 610, 612 (2d Cir. 2012). On the third step, factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine Const. Co.*, 571 U.S. at 63 n.6 (2013).

[14] In *Atlantic Marine*, the Supreme Court reaffirmed the strong public policy identified in *Bremen* supporting the enforcement of forum selection clauses and held that "both [28 U.S.C.] §1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard"; therefore, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." 571 U.S. at 61.

forum will be so difficult and inconvenient that the plaintiff effectively will be
deprived of his day in court.'

*Id.* (quoting *Martinez*, 740 F.3d at 228 (internal quotation marks omitted)).  "These exceptions

are 'interpreted narrowly.'" *Id.* (quoting *S.K.I.  Beer Corp.  v. Baltika Brewery*, 612 F.3d 705,

711 (2d Cir. 2010)).

### 1.    The BPA's Forum Selection Clause is Presumptively Enforceable and None of the Exceptions to Enforcement Apply

#### a.    *The Forum Selection Clause Was Reasonably Communicated To Plaintiff*

First, as is evident from the allegations in Plaintiff's Amended Complaint, the terms of

the BPA, including the forum selection clause, were the product of extensive negotiations

between the Plaintiff and Inflexion, both of whom were sophisticated parties represented by

counsel.  (*See, e.g.*, Am. Compl. ¶¶ 57-96.) As such, there can be no dispute that the forum

selection clause was reasonably communicated to Plaintiff.

#### b.    *The Forum Selection Clause is Mandatory*

Second, the forum selection clause is unambiguously mandatory because it confers

exclusive jurisdiction on the courts of England and Wales for "*any* claim or matter arising out of

or in connection with [the BPA], its negotiations or its subject matter, or any non-contractual

obligation arising in connection with the foregoing." (Moulding Decl., Exhibit A at § 28.2)

(emphasis added); *see Phillips*, 494 F.3d at 386 ("A forum selection clause is viewed as

mandatory when it confers exclusive jurisdiction on the designated forum or incorporates

obligatory venue language."); *see also Donohue v Armco Inc.*, [2001] UKHL 64 (holding, under

English law, "when parties have bound themselves by an exclusive jurisdiction clause effect

should ordinarily be given to that obligation in the absence of strong reasons for departing from

it.").  The presence of the mandatory, exclusive forum selection clause under which Plaintiff

agreed to submit to the exclusive jurisdiction of the courts of England and Wales dictates that no weight be given to Plaintiff's choice of New York as a forum.  *See Atl. Marine Const. Co.*, 571 U.S. at 63-64 ("[W]hen a plaintiff agrees by contract to bring suit only in a specified forum . . . the Plaintiff has effectively exercised its 'venue privilege' before a dispute arises"; "[o]nly that initial choice deserves deference . . . .").[15]

> c.  *The Forum Selection Clause Covers The Claims and Relevant Parties*

Third, as explained in Section IV(C)(2), the alleged conduct underlying Plaintiff's claims entirely arises out of and in connection with the negotiations leading up to the BPA and/or the subject matter of the BPA, namely Plaintiff's sale of its assets to Pharmaspectra Group. Therefore, the claims are unquestionably covered by the forum selection clause.  *See Martinez*, 740 F.3d at 224-25 (discussing and quoting multiple English cases confirming that, under English law, language in jurisdiction clauses like the forum selection clause of the BPA is to be construed widely and generously and encompasses claims arising from pre-inception matters such as misrepresentation, in addition to claims about the contract itself).  Similarly, as explained in Section IV(C)(2), notwithstanding Plaintiff's conclusory efforts to shift the focus of its claims to Mr. Moulding, Plaintiff's real dispute in this case is with Inflexion by and through

---

[15] Even under the unmodified *forum non conveniens* test that is applied when the parties do not have a forum selection clause in place, the Court should still conclude that no deference should be afforded to Plaintiff's choice of New York as a forum because the factors still weigh heavily against giving New York any deference as the proper forum for this matter.  Although Plaintiff is a U.S. citizen, Plaintiff is a citizen of, and its sole member resides in, California, and it does not conduct any business in the State of New York or even have authority to do business in New York.  As Plaintiff has already acknowledged in the parties' proposed Civil Case Management Plan and Scheduling Order, Mr. Moulding and other potential witnesses as well as relevant documents are located in England, rather than New York.  (*See* Proposed Case Management Plan, ECF 17.)  Mr. Moulding is amenable to suit in England as a citizen of the United Kingdom and Mr. Moulding's ability to obtain appropriate legal assistance to defend in this dispute against Plaintiff's claims, which the parties agreed would be governed by and construed in accordance with English law pursuant to the choice of law provision of the BPA, given that they all ultimately arise from the BPA, its subject matter, the negotiations leading thereto, and related non-contractual obligations.  (*See* Moulding Decl., Exhibit A at § 28.1.)  Moreover, Plaintiff's sole member and principal has already shown a willingness to file suit in the United Kingdom. (Am. Compl. ¶ 198.)

Pharmaspectra Group, both of whom as indispensable parties that Plaintiff has failed to join. Plaintiff and Pharmaspectra Group are parties to the BPA covered by the forum selection clause.

*d.     None Of The Exceptions To Presumptive Enforcement Apply*

*1.     There Was No Fraud Or Overreaching*

First, there can be no claim that the forum selection clause was the result of fraud or overreaching as it was incorporated as part of extensive negotiations between sophisticated parties represented by counsel.

*2.     England Is A Fair And Adequate Forum*

Second, there can be no claim that the law in England is unfair or that England is an inadequate alternative forum because: 1) the parties selected English law as the governing law in the BPA choice of law provision, and they submitted to the exclusive jurisdiction of the courts of England and Wales; 2) Mr. Moulding is amenable to service of process there as a domiciliary of Cheltenham, Gloucestershire, United Kingdom; and 3) England unquestionably permits litigation of the subject matter underlying this dispute.  *See Aguinda*, 303 F.3d at 477 ("[A]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy th[e] [alternative forum] requirement") (citation omitted); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67, 75 (2d Cir. 2003) (holding that "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute" and noting England permits litigation to resolve commercial disputes involving alleged violations of English statutory law as well as the same type of claims raised in this action, including fraud, breach of contract, breach of fiduciary duty, and various torts).

*3.     Federal Public Policy Supports England As The Proper Forum*

Third, enforcing this forum selection clause does not contravene any federal public policy of the United States, especially when in this case there are ample and just remedies under English law.  *See Martinez v. Bloomberg LP*, 740 F.3d at 228.  Instead, the public interest factors of the *forum non conveniens* analysis weigh strongly in favor of having this matter litigated in England.  Federal public policy dictates that there is a strong interest in having matters tried in the "forum that is at home with the law."  *Atl.  Marine Const.  Co.*, 571 U.S. at 63 n.6.  Here, the choice of law and forum selection clauses in the BPA make plain that England is the forum most at home with the applicable law governing Plaintiff's claims.  Moreover, there are many ways in which England also is the *locus* of this dispute, including that the dispute is governed by English law; Mr. Moulding, Pharmaspectra Group, Inflexion, other potential witnesses, and relevant documents all are located in England.  Therefore, the factor that considers the local interest in having localized controversy decided at home also supports England as the proper forum.  *Id.*

### 4.     *Plaintiff Will Not Be Deprived Of Its Day In Court*

Finally, Plaintiff cannot argue that trial in England will be so difficult and inconvenient that it will effectively will be deprived of its day in court because its sole member and principal has already shown a willingness and predisposition to file suit in the United Kingdom as alleged in Paragraph 198 of the Amended Complaint.  (Am. Compl. ¶ 198.) Moreover, with respect to the private *forum non conveniens* interests, *Atlantic Marine* requires that the Court not consider any argument about private interests and instead deem that the private-interests factors weigh entirely in favor of the preselected forum of England.[16]  *Id.*

---

[16] Even under the unmodified *forum non conveniens* test that is applied when the parties do not have a forum selection clause in place, the private interest factors weigh in favor of England. As noted above, Plaintiff has already acknowledged that litigating this case in New York presents difficulties due to the defendant and other witnesses as well as relevant documents being located overseas, which is a clear indication and admission that litigating this matter in England is a better choice because it will be easier to access sources of proof and compel process for attendance of unwilling witnesses and will make it less expensive to obtain attendance for willing witnesses.  As such, trying the case in England would be far easier, expeditious, and less expensive than in New York.

Accordingly, Plaintiff cannot overcome the presumptive enforceability of the BPA's forum selection clause.  As such, under both the applicable *forum non conveniens* analysis that is modified when a forum selection clause is present and the unmodified *forum non conveniens* test, this case should be dismissed on *forum non conveniens* grounds.

### C.   Plaintiff's Amended Complaint Should Be Dismissed Pursuant To Fed.  R. Civ. P. 12(b)(7) For Failure To Join Indispensable Parties

Fed. R. Civ. P. 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party.  First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Vision en Analisis y Estrategia, S.A. v. Andersen*, 662 F. App'x 29, 31 (2d Cir. 2016).  "[I]f the resolution of a Plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Id.* (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002)); *see also Fagioli S.p.A.*, 2015 WL 3540848, at *3 (concluding non-party was necessary and had claimed interest in subject of the action because adjudication of the rights and obligations of the parties to the agreement at issue in the case was likely to affect the interests the non-party was seeking to enforce in another action).

"If the nonparty is necessary but joinder is not feasible for practical or jurisdictional reasons, the court then must consider the factors set forth in Rule 19(b) to determine whether to dismiss the case." *ConnTech Dev.  Co. v. Univ. of Conn. Educ. Prop., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996).  In *Vision en Analisis y Estrategia, S.A.  de C.V.*, this Court dismissed Plaintiffs' claims of fraud, breach of fiduciary duties, and other tortious acts related to the lapse of a life insurance policy purchased on secondary market due to Plaintiffs' failure to join a non-party private investment fund of which Plaintiffs were shareholders, which non-party the court

concluded was necessary and indispensable.  No.  14-CV-8016 SAS, 2015 WL 4510772, at *1-2 (S.D.N.Y.  July 24, 2015).  This Court concluded that the non-party was necessary under Rule 19(a) because Plaintiff's claims directly implicated the non-party and centered around the non-party's conduct, which was highlighted throughout the Plaintiff's complaint and would play a role in the disposition of the case.  *Id.* at *5.  This Court also determined that proceeding without the non-parties "would impede their interests as their conduct is largely the focus of the litigation."  *Id.*  Notably, this Court also specifically held that the non-party "is necessary to this case for the additional reason that it is a named party to a contract in dispute."  *Id.*

> 1. **Counts I-VII Of Plaintiff's Amended Complaint Should Be Dismissed Because Pharmaspectra Group And Inflexion Are Necessary And Indispensable Parties Whose Joinder Is Not Feasible**

Notwithstanding Plaintiff's new conclusory assertions in its Amended Complaint that its claims are based on Defendant's conduct and relate only to his Employment Agreement, as shown in Section II, even a brief review of the substantive factual allegations underlying Plaintiff's Amended Complaint reaffirms that Plaintiff's claims in Counts I-VII arise entirely out of the BPA, its subject matter, and the negotiations leading thereto.  Further, Plaintiff's amended allegations now expressly acknowledge the centrality of the BPA to its claims as the consummation of the negotiations discussed extensively in Counts I-VII and the vehicle through which it "transferred its business and assets to Inflexion"  (Am.  Compl. ¶¶ 94-95.) As such, resolution of Plaintiff's claims necessarily will require the definition of certain rights of Pharmaspectra Group under the BPA.  In order for the Court to be able to decide the argument raised in Section IV(A)(1) regarding assignment, this Court necessarily will have to evaluate the terms of the BPA and define certain rights of Pharmaspectra Group under the agreement.[17]

---

[17] As noted in Section IV(A)(1), plaintiff's response to Defendant's Motion to Dismiss its original complaint with the allegation in Paragraph 96 of its Amended Complaint that Plaintiff somehow did not transfer the claims it has

Likewise, the Court will need to evaluate the applicability of the forum selection clause and choice of law provision in the BPA to evaluate whether this matter should be dismissed on forum non conveniens grounds.  This analysis will also require the definition of Pharmaspectra Group's rights under the agreement.  As such, there can be no doubt that Pharmaspectra Group is a necessary party to this action.  *See Vision*, 662 F.  App'x at 31.

Moreover, much like the non-party investment fund in *Vision*, Plaintiff's claims directly implicate Inflexion and Plaintiff's allegations overwhelmingly focus on Inflexion's conduct such that its conduct will unquestionably play a role in the disposition of this case.  (*See, e.g.*, Am. Compl. ¶¶ 57-60, 66, 69, 81-85, 114-115, 121.) Proceeding without Inflexion would impede its interests given the extent to which its conduct is the focus of the Plaintiff's Amended Complaint. As such, Inflexion is a necessary party.  *See Vision*, 2015 WL 4510772, at *5.

In light of the parties' forum selection clause and all of the *forum non conveniens* factors discussed in Section IV(B), joining Pharmaspectra Group and/or Inflexion is not feasible. Therefore, this Court should dismiss Counts I-VII of Plaintiff's Amended Complaint for nonjoinder because: 1) proceeding in the absence of Pharmaspectra Group and Inflexion would prejudice Pharmaspectra Group's ability to adequately represent itself and protect its rights under the BPA and Inflexion's right to defend itself and influence any findings the Court may make with respect to it; 2) there is nothing that this Court can do to avoid or lessen such prejudice; 3) the prejudice of proceeding in the absence of these two non-parties would outweigh any

---

raised in this Action are not relevant to the Court's analysis of the unambiguous terms of the BPA and cannot be squared with the plain language of the BPA.  However, plaintiff's addition of this allegation is a clear acknowledgment of the Court's need to evaluate the terms of the BPA and necessarily define certain rights of the parties thereto, including Pharmaspectra Group.

adequacy of the award; and 4) Plaintiff has an alternative adequate remedy of raising its claims in the courts of England and Wales as required by the BPA forum selection clause.[18]

        **2.**        **Count VIII Of Plaintiff's Amended Complaint Should Be Dismissed Because The United Kingdom Tax Authority Is A Necessary And Indispensable Party Whose Joinder Is Not Feasible**

By its own allegations in Count VIII, Plaintiff has asserted that certain United Kingdom tax authorities have claimed an interest in the subject matter of this action, namely, the $509,002.85 unsatisfied tax claim that Plaintiff alleges that the United Kingdom tax authorities may ultimately seek to have Plaintiff pay.  (*See* Am. Compl. ¶¶ 194-200.) Resolving Plaintiff's Count VIII in absence of the United Kingdom tax authorities to which it refers would leave Mr. Moulding subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest because Plaintiff has asked the Court for a declaratory judgment requiring Defendant to indemnify it as to liability for the unsatisfied tax claim in the amount of $509,002.85 or "such other amount, if any, as *may be found* to be lawfully owing to the United Kingdom tax authorities."  (*Id.* at ¶ 202) (emphasis added). Because Plaintiff has not alleged that it has already paid the alleged tax claim or if the amount that it may ultimately owe is the same as the alleged claim, if the Court were to award this relief without the United Kingdom tax authorities being joined, Mr. Moulding could be put in a position where he may have to pay both Plaintiff and the United Kingdom tax authorities for the same amount of alleged tax debt or where he pays Plaintiff more than the amount that is ultimately found to be lawfully owed to the United Kingdom tax authorities.

---

[18] The adequacy of this alternative remedy is evident in part from the fact that Plaintiff's sole member and principal has already shown a willingness to file suit in the England as alleged in Paragraph 198 of the Amended Complaint.

Because joinder of the United Kingdom tax authorities is not feasible,[19] Count VIII should be dismissed because 1) proceeding in the absence of the tax authorities could substantially prejudice Mr. Moulding given the risk of being subject to double or inconsistent obligations; 2) there is nothing that this Court can do to avoid or lessen such prejudice; 3) the prejudice of awarding the relief Plaintiff seeks would outweigh any adequacy of the award; and 4) Plaintiff could challenge the tax owed directly with the United Kingdom tax authorities as an alternative adequate remedy if Count VIII is dismissed for nonjoinder.[20]  As such, Count VIII should be dismissed for nonjoinder.

### D.  Plaintiff Is Not Authorized To Do Business In The State Of New York And Therefore Is Statutorily Barred From Maintaining The Action

Plaintiff is a foreign limited liability company without authority to do business in the State of New York and, therefore, is barred under New York's Limited Liability Company Law § 808(a) from maintaining this action.  Section 808(a) provides:

> A foreign limited liability company doing business in the state without having received a certificate of authority to do business in this *state may not maintain any action, suit, or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state.*

NY Limit Liab Co § 808 (McKinney) (emphasis added).  Plaintiff's registered agent resigned on October 14, 2020 (*See* Ex. 4.) On November 16, 2020, the New York State Department of State filed a Certificate of Resignation for Receipt of Process of PS US LLC, which triggered the suspension of Plaintiff's authority to do business in New York pursuant to New York Limited

---

[19] *See* Foreign Sovereign Immunity Act, 28 U.S.C. § 1602 *et seq.* (providing that foreign states are immune from the jurisdiction of the courts of the United States with certain exceptions that do not apply here).
[20] This alternative remedy is adequate in part for the reasons discussed in Footnote 18.

Liability Law § 301-A.[21] (*See* Ex.  5.) As such, Plaintiff is statutorily barred from maintaining

this action.

    **E.**    **Plaintiff's Amended Complaint Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted In Counts I-VII Of The Amended Complaint**

        **1.**    **Plaintiff's Breach of Contract Claim Fails**

            *a.*    *The Claim Is Barred Because The Employment Agreement Was Terminated And Superseded By The Settlement Agreement*

Plaintiff seeks recovery for the alleged breach of the Employment Agreement with Mr.

Moulding that preceded the controlling Settlement Agreement between the parties.  (*See* Am.

Compl. ¶¶ 130-37.) Yet, the Second Circuit has held that, under New York law, "[w]hen the

parties to a contract enter into a new agreement that expressly supersedes the previous

agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a

suit on the new agreement." *Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990).  A

written contract is documentary evidence that provides a basis for dismissing a cause of action

where, as here, the contract and other documentary evidence unambiguously disproves or flatly

contradicts the factual allegations or legal conclusions upon which the cause of action rests,

which are therefore not presumed to be true or accorded every favorable inference. *See Cohen*,

944 F.  Supp.  at 207.

    Plaintiff cannot state a claim for breach of the employment agreement because any such

agreement was terminated or otherwise "extinguished" by the Settlement Agreement.

(Settlement Agreement at § 2); *Baker*, 915 F.2d at 811. In the Amended Complaint, Plaintiff

---

[21] "Upon the failure of the designating limited liability company to file a certificate of amendment or certificate of change providing for the designation by the limited liability company of the new address after the filing of a certificate of resignation for receipt of process with the secretary of state, its authority to do business in this state shall be suspended."  NY Limit. Liab. Co. §  301-A (McKinney).

even now **admits** that "[t]he Confidential Agreement[22] terminated the Employment Agreement."
(Am. Compl. ¶ 98.) Plaintiff attempts to contort this claim by alleging that the Settlement
Agreement "did not release Defendant for any breaches of the Employment Agreement
committed prior to that date or any other claims that Plaintiff might have against Defendant."
(*Id.*) The law however is clear: once the previous agreement is terminated, the only remedy
becomes one for breach of the **new** agreement. *See Baker*, 915 F.2d at 811. Here, Count I is
unequivocally a claim for breach of the **previous** agreement – the Employment Contract – and
not breach of the **new** agreement -- the Settlement Agreement. (Am. Compl. ¶¶ 130-37.) The
count's title "Breach of Contract--Employment Agreement" further supports this. Accordingly,
New York law forecloses Plaintiff's claim for breach of contract regarding the Employment
Agreement between it and Mr. Moulding. It must be dismissed.

Moreover, in addition to assigning its claims, under § 8.5 of the BPA, Plaintiff expressly
agreed with Pharmaspectra Group (as trustee for Mr. Moulding and the other Offered
Employees) to "waive any claim or remedy or right which it may have in respect of any
misrepresentation, inaccuracy or omission in or from any information or advice supplied or given
by" Mr. Moulding and the other Offered Employees "for the purpose of assisting the Warrantors
in giving any warranty, representation, undertaking or covenant, in preparing the Disclosure
Letter and in entering into this Agreement, or any agreement or document entered into pursuant
to this Agreement." (Moulding Decl., Exhibit A at § 8.5.) Plaintiff's allegations in Counts I-VII
are entirely founded on Plaintiff's claim that Mr. Moulding misrepresented and provided
inaccurate information and advice to the Plaintiff in connection with entering into the BPA to
sell its assets. Therefore, Plaintiff unambiguously agreed to waive the claims it has asserted in

---

[22] The "Confidential Agreement" named by Plaintiff is the Settlement Agreement discussed herein.

Counts I-VII by entering into the BPA.  Thus, this waiver should serve as an additional basis for dismissal.

> b.    *Plaintiff Fails To State A Prima Facie Case For Breach of Contract*

Even if the Settlement Agreement does not bar these claims, Plaintiff has failed to set forth a *prima facie* case for breach of contract in Count I.  Under New York law, a valid breach of contract claim requires: (1) the existence of a contract, (2) performance of the contract by the Plaintiff, (3) breach by the defendant, and (4) damages suffered as a result of the breach.  *See Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015).  To sustain a claim, a claim for breach of contract requires an assertion of damages. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).  Damages in a breach of contract claim must be "attributable to the breach." *Excellent Home Care Servs., LLC v. FGA, Inc.,* No. 13-cv-5390 (ILG)(CLP), 2014 WL 4258992, at *2 (E.D.N.Y.  Aug.  27, 2014); *see Nat'l Mkt.  Share, Inc.  v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir.  2004) ("[A] plaintiff must prove that a defendant's breach [of contract] directly and proximately caused his or her damages … [which] must be such only as actually follow or may follow from the breach of the contract." (alterations omitted, emphasis in original)).

In Count I, Plaintiff fails to state a claim for two reasons.  First, Plaintiff falsely claims that it performed under the Employment Agreement, despite the Settlement Agreement showing otherwise.  The Settlement Agreement expressly states that Mr. Moulding was owed back pay for wages that Plaintiff did not pay him during his employment.  (*See* Moulding Decl., Exhibit B at Settlement Agreement, Ex.  A). Therefore, Plaintiff did not compensate Mr. Moulding under the Employment Agreement as required.  Even after Defendant raised this argument in the original Motion to Dismiss, Plaintiff has made no attempt to try to fix this deficiency.

Accordingly, Plaintiff did not perform under the Employment Agreement, and therefore the claim fails on this ground.

Second, Plaintiff's claim is devoid of any facts setting forth the nature of the harm to Plaintiff or how it was allegedly caused by Mr. Moulding beyond cursory allegations.  Plaintiff merely states "Defendant's breaches have directly and proximately caused Plaintiff to suffer damages in excess of Forty Eight Million Dollars ($48,000,000.00) through lost opportunity by, among other things, causing Plaintiff to lose opportunities with other potential buyers as set forth above and allowing Inflexion, with the benefit of confidential information improperly disclosed by Defendant, to structure the sale transaction in a manner that disadvantaged Plaintiff.  (Am. Compl. ¶ 136), and that "Plaintiff is entitled to a judgment in an amount to be proven at trial." (*Id*. at ¶ 137.) Such "boilerplate allegations" fail to establish the requisite damage needed to state a claim. *See Pitcock v. Kasowitz, Benson, Torres & Friedman LLP*, 74 A.D.3d 613, 615 (1st Dep't 2010) ("vague, boilerplate allegations of damages" are insufficient to sustain a cause of action for breach of contract); *Lexington 360 Assoc. v. First Union Natl. Bank of N.  Carolina*, 234 A.D.2d 187, 190 (1st Dep't 1996) (dismissing breach of contract claim for failure to allege "evidence sufficient to demonstrate damages flowing from the breach alleged and relie[d], instead, on wholly speculative theories of damages"); *Gordon v.  Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dep't 1988) (same).  Plaintiff's attempt to cure this deficit in the Amended Complaint by alleging that Mr.  Moulding's disclosure of confidential information caused the harm is unavailing under New York law.  *Parker Waichman LLP v.  Squier, Knapp & Dunn Commc'ns, Inc.*, 138 A.D.3d 570, 570–71, 28 N.Y.S.3d 603 (2016) ("The complaint's boilerplate allegations that defendants disclosed confidential information, thereby causing harm, are too vague and conclusory to sustain a breach of contract cause of action… Moreover, the complaint

failed to allege how the alleged breach caused any injury.").  Accordingly, the claim must be dismissed for failure to state a prima facie case.

>    **2.    Plaintiff's Breach Of Fiduciary Duty Claim Is Duplicative And Fails To State A Claim**

Plaintiff's breach of fiduciary duty claim is merely duplicative of the breach of contract claim.  "Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract" and must be dismissed. *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publishing Co*., 580 F.Supp.2d 285, 294–95 (S.D.N.Y.2008); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 196 (S.D.N.Y.2011) ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." (internal brackets and quotation marks omitted)).  This Court considers a breach of fiduciary duty claim duplicative when it is "based on allegations of fiduciary wrongdoing that 'are [ ] expressly raised in Plaintiff's breach of contract claim.'" *Uni-World Cap., L.P. v. Preferred Fragrance, Inc*., 43 F. Supp. 3d 236, 244 (S.D.N.Y.  2014); *N.  Shipping Funds I, LLC v.  Icon Cap.  Corp*., 921 F.  Supp.  2d 94, 105 (S.D.N.Y.  2013) (quoting *Balta v.  Ayco Co.,* 626 F.Supp.2d 347, 360 (W.D.N.Y.2009)).  Plaintiffs may not maintain claims for breach of contract and breach of fiduciary duty "without 'allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties.'" *Id*.

The Amended Complaint contends that the fiduciary relationship is based upon Mr. Moulding's employment as an officer and employee of the company.  (Am. Compl. ¶¶ 139-40.) Accordingly, Plaintiff's breach of fiduciary duty claim is identical in substance to the breach of contract claim and is therefore duplicative.  Both claims are premised upon the same facts and

seek the same damages for the alleged conduct.  *See E–Global Alliances, LLC v. Anderson*, No. 10 Civ.  2844, 2011 WL 8879268, at *9 (S.D.N.Y.  May 11, 2011) (dismissing breach of fiduciary duty claim when based upon same facts and seek same damages for same alleged conduct as breach of contract claim). In the Amended Complaint, Plaintiff attempts to circumvent well-settled law by claiming that Mr. Moulding's alleged fiduciary duties arose separately form the Employment Agreement.  Plaintiff's argument misunderstands the law. (Am. Compl. ¶ 141.) This Court however firmly maintains that "the critical issue is that the proposed 'breach of fiduciary duty claim is identical in <u>substance</u> to the breach of contract claim and is therefore duplicative.  Both claims are premised upon the same facts and seek the same damages for the alleged conduct.'"  *Uni-World Cap., L.P.*, 43 F. Supp. 3d at 244. It is not relevant whether the Employment Agreement contains any explicit provision; rather, the analysis depends on whether Plaintiff's allegations supporting this claim mirror those supporting the breach of contract claim.  *See id*.  Here, they do.  Plaintiff alleges breach of fiduciary duty count based on Mr. Moulding allegedly "engaging in self-dealing and conspiracy with Inflexion." (Am. Compl. ¶ 142.) Likewise, Plaintiff's breach of contract claim is based on Mr. Moulding allegedly "committing fraud and self-dealing, by sharing Plaintiff's private information with Inflexion and breaching confidentiality, and by conspiring with Inflexion to disadvantage the terms of the sale against Plaintiff, in violation of, inter alia, Sections 4, 6, and 7 of the Employment Agreement." (*Id*. at ¶ 135.) In both claims, Plaintiff seeks identical damages.  (*Id*.  at ¶¶ 136-37, 146-47); *see E– Global Alliances, LLC,* 2011 WL 8879268, at *9 (dismissing breach of fiduciary duty claim when based upon same facts and seeking same damages for same alleged conduct as breach of contract claim).  Accordingly, because the fiduciary duty claim is duplicative of the breach of

contract claim, this claim must be dismissed. *See Icon Cap. Corp.*, 921 F. Supp. 2d at 105

(dismissing breach of fiduciary claim as duplicative of breach of contract claim).

Moreover, even if the Court does not consider this claim to be duplicative, the claim fails

to state a claim upon which relief can be granted. To state a claim, a plaintiff must plead: "(1)

the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages

directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776,

777 (N.Y. App. Div. 2010); *Deblinger v. Sani–Pine Prods. Co., Inc.*, 107 A.D.3d 659, 660 (N.Y.

App. Div. 2010). It is well settled that "lost future opportunities . . . are too speculative to

amount to actual harm under New York law." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216,

244 (2d Cir. 2020) (internal quotation marks omitted). Here, Plaintiff only asserts damages "in

the form of lost opportunity, undervalued payout to Plaintiff in connection with the transaction

and excess payments to Defendant."[23] (Am. Compl. at ¶ 146.) Accordingly, Plaintiff has failed

to satisfy the damage element of the cause of action, and therefore the claim must be dismissed.

### 3.    Plaintiff's Unjust Enrichment Claim Fails

Plaintiff's unjust enrichment claim seeks damages for a certain portion of the Equity

Incentive Payment that Plaintiff claims Mr. Moulding has wrongfully retained because

Pharmaspectra Group did not meet the post-closing revenue targets that the parties set as goals

for the company following the transfer of plaintiff's Assets. (*Id.* at ¶¶ 148-156.) Plaintiff bases

its claim on its allegation that the Equity Incentive Payment was made conditional "under the

contract" upon Mr. Moulding helping Pharmaspectra Group to meet the post-closing targets. (*Id.*

at ¶ 150.) This allegation, however, is directly contradicted by the plain language of the

---

[23] As explained in the following subsection, the alleged harm of an "excess payment" to Mr. Moulding is predicated
on Plaintiff's false allegation (directly contradicted by the Settlement Agreement) that the Equity Incentive Payment
was conditional and, therefore, also cannot form a viable basis for damages.

Settlement Agreement, which expressly provided that Mr. Moulding would receive the entire

Equity Incentive Payment in the amount of $2,625,923.10 "[r]egardless of whether [Mr.

Moulding] sign[ed] [the Settlement Agreement]."[24]  (Moulding Decl., Exhibit B at Settlement

Agreement, § 2.) The Settlement Agreement also stated that the Equity Incentive Payment along

with the other payments listed in Exhibit A to the Settlement Agreement "represent[ed] the

complete and final amounts owed to [Mr. Moulding] by the [Plaintiff]."  (*Id.*) As such, Plaintiff

cannot, as a matter of law, establish the essential element of its unjust enrichment claim that "it is

against equity and good conscience" to permit Mr. Moulding to retain the amount Plaintiff seeks

to recover.  *See Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015), *aff'd,* 668

F. App'x 373 (2d Cir. 2016) ("It is well settled that the essential inquiry in any action for unjust

enrichment . . . is whether it is against equity and good conscience to permit the defendant to

retain what is sought to be recovered.")

Moreover, the very existence of the Settlement Agreement precludes Plaintiff's unjust

enrichment claim because "the existence of a valid and enforceable written contract governing a

particular subject matter ordinarily precludes recovery in quasi contract [i.e., unjust enrichment]

for events arising out of the same subject matter.'" *Uni-World Cap.  L.P. v. Preferred*

*Fragrance, Inc.*, No. 13 CIV. 7204 PAE, 2015 WL 363824, at *5 (S.D.N.Y.  Jan. 28, 2015)

(quoting *MacDraw, Inc. v.  CIT Grp.  Equip. Fin., Inc.*, 157 F.3d 956, 964 (2d Cir.1998)). "This

principle applies where 'the contract is one between parties to the lawsuit' and where, as here,

'one party to the lawsuit is not a party to the contract.'" *Id*.  "[U]njust enrichment is not a

catchall cause of action to be used when others fail." *Corsello v.  Verizon N.Y., Inc.*, 18 N.Y.3d

777, 790 (2012).  Here, the parties do not dispute that the validity of the Settlement Agreement,

---

[24] Given the contradiction between the Settlement Agreement and the allegations of Plaintiff's Complaint, the plain language of Settlement Agreement controls.  *See Cohen*, 944 F. Supp. at 207.

which governs the Equity Incentive Payment.  Accordingly, the Settlement Agreement "precludes recovery in quasi-contract or unjust enrichment for occurrences or transactions arising out of the same matter." *CBS Broad.  Inc.  v.  Jones*, 460 F.  Supp.  2d 500, 506 (S.D.N.Y.  2006) (dismissing unjust enrichment claim because "there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract").  Therefore, the claim must be dismissed.

### 4.       Plaintiff Fails to Plead Fraud

#### a.       *Plaintiff Fails To Plead Fraud With The Requisite Particularity*

Fed. R. Civ. P. 9(b) provides: "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."  Accordingly, a plaintiff must plead "(1) detail the statements (or omissions) that the Plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui,* 91 F.3d 337, 340 (2d Cir. 1996); *see DiVittorio v. Equidyne Extractive Indus*., 822 F.2d 1242, 1247 (2d Cir. 1987) (noting that "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations"). "In short, a Plaintiff must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd*., 567 F.  Supp.  2d 432, 441-42 (S.D.N.Y.  2008) (citations and quotation marks omitted).  "In addition to stating the 'where, when, who or how' of the allegedly fraudulent statements, a plaintiff alleging fraudulent inducement must also show that the defendant exhibited scienter, or fraudulent intent." *See Miller v.  Holtzbrinck Publishers, LLC*, No.  08 CIV 3508 (HB), 2009 WL 528620, at *3 (S.D.N.Y.  Mar.  3, 2009), *aff'd sub nom.*, 377 F.  App'x 72 (2d Cir.  2010).

The Second Circuit has "repeatedly held that such conclusory allegations do not satisfy Rule 9(b)." *Eternity Glob.  Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y*., 375 F.3d 168, 187

(2d Cir. 2004); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982) ("conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough."). For instance, the assertion a defendant "knew that its representations …were false… made eight months prior to [Plaintiff]'s purchase" comes short of the Rule 9(b) standard. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d at 187. Here, Plaintiff's allegations fail to meet Rule 9(b)'s requirements. Count IV recites unfocused, conclusory allegations of "false representations" by Mr. Moulding, including

> (1) that Inflexion was the highest bidder for Plaintiff's assets; (2) that Inflexion would be able to complete due diligence and the transaction quickly; (3) that Inflexion was a trustworthy buyer and a good fit for Plaintiff; (4) that Pharmaspectra would earn a certain amount of revenue sufficient to result in anticipated earn-out payments to Plaintiff; and (5) that he was entitled to the full Equity Incentive Payment amount based upon the anticipated earn-out payments to Plaintiff.

(Am. Compl. ¶ 158.) In the Amended Complaint, Plaintiff half-heartedly includes some the requisite information, including the month, mode, and general statement allegedly stated by Mr. Moulding. That is not enough. Missing here are "particularized facts to support the inference that the defendants acted . . . with fraudulent intent." *Eternity Global*, 375 F.3d at 187; *see also Orix Credit Alliance, Inc. v. R.E. Hable Co.*, 256 A.D.2d 114, 115 (N.Y. App. Div. 1998) (finding contentions that defendants misrepresented their intent to charge more than promised did not state fraud claim); *see Holtzbrinck Publishers, LLC*, 2009 WL 528620, at *3; *Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d at 441-42. Accordingly, Count IV is not pled properly and must be dismissed.

> **b.      *Plaintiff Fails To State A Claim For Fraudulent Misrepresentation/Inducement***

Even assuming, *arguendo*, that Plaintiff has properly pled fraud, Plaintiff fails to state a *prima facie* case for fraudulent misrepresentation. Under New York law, to state a claim for fraudulent misrepresentation "a Plaintiff must show that (1) the defendant made a material false

representation, (2) the defendant intended to defraud the Plaintiff thereby, (3) the Plaintiff reasonably relied upon the representation, and (4) the Plaintiff suffered damage as a result of such reliance." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 186–87 (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995)). It is well settled that actionable fraud cannot be based on a statement of intent, a promise of future performance, puffery, or "speculation and expressions of hope for the future." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 350 (S.D.N.Y. 2020) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."). In fact, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cohen*, 25 F.3d at 1172. Further, "[a] plaintiff cannot close his eyes to an obvious fraud, and cannot demonstrate reasonable reliance without making inquiry and investigation if he has the ability, through ordinary intelligence, to ferret out the reliability or truth ...." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

Here, Plaintiff seeks to disguise vague generalizations regarding future performance as actionable misrepresentation. That is not enough to state a claim. Furthermore, in the Amended Complaint, Plaintiff fails to allege that it made any inquiry or investigation into the purported misrepresentations "to ferret out the reliability or truth." *See id*. Rather, at most, as alleged, Plaintiff went into Mr. Moulding's office and did not see "certain documents relating to that presentation regarding new business ventures and other financial information relating to Plaintiff

were missing from Defendant's office." (Am. Compl. ¶ 55.) Under no circumstance could that

be implied to be an investigation "to ferret out the reliability or truth." *Fahnestock & Co.*, 443

F.3d at 234.  Furthermore, he has not established that his reliance on any of the alleged

misrepresentations was reasonable.[25]  Instead, Plaintiff merely makes conclusory statements that

he "justifiably and reasonably relied on the representations." (Am. Compl. ¶ 162.) Accordingly,

on the face of the Amended Complaint, the claim fails.

### 5.        Plaintiff Cannot Set Forth A Claim For Civil Conspiracy

Plaintiff's civil conspiracy claim consists of nothing more than vague conclusions that

Mr. Moulding conspired with Inflexion (not a named defendant) to defraud Plaintiff.  There is

not a single factual allegation in the Amended Complaint that supports such conclusion.  To state

a claim for civil conspiracy, a plaintiff must allege "(1) an agreement among two or more parties,

(2) a common objective, (3) acts in furtherance of the objective, and (4) knowledge." *Diamond*

*State Ins.  Co. v. Worldwide Weather Trading LLC*, No. 02 Civ. 2900, 2002 WL 31819217, at *4

(S.D.N.Y.  Dec. 16, 2002).  Again, mere conclusory allegations are insufficient. *See Hecht v.*

*Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.  4 (2d Cir.1990) ("[T]he complaint must

allege some factual basis for a finding of a conscious agreement among the defendants."); *Grove*

*Press, Inc.  v.  Angleton,* 649 F.2d 121, 123 (2d Cir.1981) ("The damage for which recovery may

be had in a civil action is not the conspiracy itself but the injury to the Plaintiff produced by

specific overt acts.  Accordingly, a bare conclusory allegation of conspiracy does not state a

cause of action." (internal quotation marks and citations omitted)); *Fierro v.  Gallucci*, No.  06–

---

[25] Plaintiff also fails to allege any compensable damages and therefore fails to establish the damages element of fraud claim. *See Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 139, 141, 143 (2017) (allegations of lost business opportunity are not a "recoverable out-of-pocket loss and "such damage is disallowed as too speculative a recovery"). Instead, Plaintiff merely asserts suffering from "significant monetary damages, including in the form of lost opportunity, undervalued payouts to Plaintiff in connection with the transaction, and excess payments to Defendant." (Am.  Compl. ¶ 163.) Such damages do not support a claim of fraud.

CV–5189, 2008 WL 2039545, at *16 (E.D.N.Y.  May 12, 2008) ("[T]o survive a motion to

dismiss, a complaint must contain more than general allegations in support of the conspiracy.

Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy."

(internal quotation marks omitted)).

Under New York law, a civil conspiracy claim must be dismissed when it is merely

duplicative of another cause of action.  A plaintiff may not "reallege a tort asserted elsewhere in

the complaint in the guise of a separate conspiracy claim." *Aetna Cas.  & Sur. Co. v. Aniero

Concrete Co., Inc*., 404 F.3d 566, 591 (2d Cir.2005). Lastly, New York does not recognize an

independent tort of conspiracy. *Kirch v. Liberty Media Corp*., 449 F.3d 388, 401 (2d Cir. 2006);

*Senior Health Ins.  Co.  of Penn.  v.  Beechwood Re Ltd*, 345 F.  Supp.3d 515, 531 (S.D.N.Y.

2018).

Accordingly, this cause of action consists of nothing more than bare conclusory

allegations of conspiracy.  The Amended Complaint is devoid of any specific times, facts, or

circumstances as to any alleged participation by Mr. Moulding in the purported conspiracy.

More fundamentally, this cause of action also arises out of exactly the same allegations as

Counts II, IV, VI, and VII, making it nothing more than an attempt to reallege the torts already

asserted elsewhere in the Amended Complaint under the guise of a separate conspiracy count,

which Plaintiff may not do.  *See Aetna Cas. & Sur. Co.*, 404 F.3d at 591.  Furthermore, because

Plaintiff fails to state causes of action for either of the torts underlying the alleged conspiracy, it

necessarily fails to state an actionable claim for civil conspiracy. *See Garfinkle v. Conf.  on

Jewish Material Claims Against Germany, Inc.*, No.  19-CV-7007 (JPO), 2020 WL 6323462, at

*5 (S.D.N.Y.  Oct.  28, 2020) ("Here, [Plaintiff's] underlying tort claims are all dismissed;

accordingly, conspiracy liability cannot lie.").  Therefore, Count V "cannot lie" and must be dismissed.

### 6. Plaintiff's Tortious Interference with Prospective Economic Gains Claims Fail

Plaintiff asserts two nearly identical claims for tortious interference with prospective economic gains (Counts VI and VII), which both must be dismissed because the Amended Complaint fails to state a *prima facie* case.  Under New York law, a claim for tortious interference with prospective economic gains lies only when "(1) [the Plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch*, 449 F.3d at 400. "[A]s a general rule, a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage." *Friedman v.  Coldwater Creek, Inc.*, 321 Fed. Appx.  58, 60 (2d Cir. 2009). "Mere persuasion directed at interfering with a prospective contract is insufficient." *Boehner v. Heise*, 734 F. Supp. 2d 389, 405 (S.D.N.Y. 2010). To establish causation, a plaintiff must show that it "would have entered into an economic relationship but for the defendant's wrongful conduct." *Memnon v. Clifford Chance US, LLP*, 667 F.Supp.2d 334, 349 (S.D.N.Y.2009). "The failure to identify a specific business relationship renders a plaintiff's allegations to the speculative level and, thus, insufficient." *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 276 (N.D.N.Y.  2016), *aff'd*, 692 F.  App'x 78 (2d Cir. 2017); *see also Mehrhof v.  Monroe-Woodbury cent.  Sch.  Dist.*, 168 A.D.3d 713, 714 (N.Y.  App.  Div.  2019) ("In order to state a cause of action to recover for tortious interference with prospective economic advantage, the

Plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered.").

Plaintiff has not identified a specific business relationship, or a third party to whom it would have sold the company, but for Mr. Moulding's alleged interference. Instead, Counts VI and VII — and, indeed, the Amended Complaint as a whole — rest on the speculation that Plaintiff "would have" have sold the company for a greater sum in a "more beneficial transaction" with a number of named and unnamed potential buyers had Mr. Moulding not interfered. (*See* Am.Compl. ¶¶  177, 188.) That is <u>not</u> enough to state a claim under New York law.  *See, e.g., Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d 348, 375 (S.D.N.Y. 2005) ("Plaintiff does not allege that it had any specific business relationship with which Defendants interfered and therefore has failed to plead that but for [Defendants'] actions it would have consummated a business relationship.").  Further, Plaintiff appears to rely on the same allegations underlying his inadequately pleaded fraud claim as the basis for both of its tortious interference claims.  (*See, e.g.*, Am.  Compl.  ¶¶ 174, 176, 180, 182.) As discussed above, Plaintiff has not pleaded fraud with the particularity necessary to state a claim.  In the absence of an adequately pleaded underlying tort or crime, Plaintiff has failed to allege the third element of tortious interference.  *See PKG Grp., LLC v.  Gamma Croma, S.p.A.*, 446 F.  Supp.  2d 249, 251 (S.D.N.Y.  2006) ("In all but the most egregious circumstances, 'dishonest, unfair, or improper means' must amount to misconduct that constitutes either a crime or an independent tort.").  Accordingly, these claims must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff's Amended Complaint should be dismissed in its entirety.

Dated: May 14, 2021
New York, NY

Respectfully submitted,

By:  /s/ Daniel A. Schwartz
   Daniel A. Schwartz (S.D.N.Y. Bar # DS4359)
   Tracy Ellis Williams (S.D.N.Y. Bar # TW5813)
   SHIPMAN & GOODWIN LLP
   445 Park Avenue, 9th Floor
   New York, NY 10022
   Tel.: (212) 376-3010
   dschwartz@goodwin.com
   tewilliams@goodwin.com
   *Attorneys for Defendant Jeremy Moulding*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of May 2021, a copy of the foregoing has been filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 /s/ Daniel A. Schwartz
   Daniel A. Schwartz
   *Attorney for Defendant Jeremy Moulding*

46