USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__11/30/2021__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PS US LLC, formerly known as                         :
PHARMASPECTRA, LLC,                                  :
                                        Plaintiff,    :
                                                      :
                    -against-                         :          21-CV-1049 (VEC)
                                                      :
JEREMY MOULDING,                                      :          ORDER
                                                      :
                                        Defendant.    :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff PS US LLC ("PS US") has sued Jeremy Moulding for breach of contract, a

number of torts, and for a declaratory judgment that he is required to indemnify Plaintiff for any

tax liability incurred in the United Kingdom.  *See* Am. Compl., Dkt. 25.  Defendants have moved

to dismiss Plaintiff's amended complaint, *inter alia*, for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See* Def. Mem. of Law, Dkt.

30.  Plaintiff opposes the motion.  *See* Pl. Mem. of Law, Dkt. 31.  For the reasons discussed

below, Defendant's motion to dismiss is GRANTED because the Court lacks subject matter

jurisdiction.[1]

## BACKGROUND

Plaintiff PS US, formerly known as Pharmaspectra, LLC, was a global provider of

medical affairs data to the pharmaceutical and biotech industry, Am. Compl. ¶14; Mr. Mahesh

Naithani was its sole member and principal, *id.* ¶¶ 13, 15.  In September 2018, PS US hired

Jeremy Moulding as its CEO.  *Id.* ¶ 27 & Ex. A.

---

[1]     Because the case is dismissed on jurisdictional grounds, the Court need not reach Defendant's other
asserted grounds for dismissal.

In or around February 2019, Moulding introduced Mr. Naithani to Inflexion, which was interested in purchasing a minority interest in Plaintiff.  *Id.* ¶ 43.  According to Plaintiff, Moulding schemed with Inflexion to fraudulently induce Plaintiff to agree to a sale that benefitted Inflexion and Moulding at Plaintiff's expense.  *Id.* ¶ 75.  Plaintiff alleges that Moulding made knowingly false representations regarding the benefits of the deal, and that those misrepresentations induced Plaintiff to proceed with a sale to Inflexion, rather than to other potential buyers.  *Id.* ¶ 49.

On October 4, 2019, PS US and Inflexion — through Pharmaspectra Group Ltd. ("Pharmaspectra Group") — entered into a Business Purchase Agreement ("BPA")[2] and Asset Purchase Agreement ("APA"),[3] pursuant to which Plaintiff transferred its business and assets to Pharmaspectra Group.  *Id.* ¶¶ 94–95.  As part of the transaction, Plaintiff entered into a confidential settlement agreement with Moulding that terminated Moulding's employment agreement as of October 4, 2019.  *Id.* ¶¶ 97–98.

## DISCUSSION

### I.    Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and moves to dismiss on other grounds as well, the Court must generally consider the Rule 12(b)(1) motion first.  *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

---

[2]      *See* Decl. of Jeremy Moulding, Dkt. 30-1 at Ex. A [hereinafter "BPA"].

[3]      *See id.* at Ex. B [hereinafter "APA"].

Pursuant to Article III of the Constitution, federal courts may only hear "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992). To ensure the presence of a case or controversy, the Court must make a threshold determination whether the plaintiff has standing to sue. *Id.* at 560–61. To have standing, a plaintiff must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court. *Id.* (cleaned up). If a plaintiff lacks standing, the claim must be dismissed for lack of subject-matter jurisdiction. *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

"The party invoking jurisdiction bears the burden of establishing that jurisdiction exists." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (internal quotation marks and citation omitted). In deciding a motion to dismiss for lack of subject-matter jurisdiction, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks and citation omitted). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see also Conyers*, 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (cleaned up).

Where, as here, "the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the

3

plaintiff has no evidentiary burden.  The task of the district court is to determine whether the

Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to

sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up).

> ### A.     Counts One Through Seven

Defendant argues that Plaintiff lacks standing to pursue Counts One through Seven

because, pursuant to the BPA, it "sold, transferred, and assigned the right to bring the claims in

this action to Pharmaspectra Group."  Def. Mem. of Law at 14.  Defendant asserts that "the plain

language of the BPA demonstrates that the parties intended to assign Plaintiff's right to bring

claims . . . against Mr. Moulding" and that, by signing the BPA, "Plaintiff extinguished any

rights it may have had against Mr. Moulding as a third party, leaving Plaintiff without standing."

*Id.* at 18.  Plaintiff responds that, under New York law, "the right to assert a fraud claim related

to a contract or note does not automatically transfer with the respective contract or note," and

that Plaintiff did not intend to — and, therefore, did not — transfer the claims asserted in this

case.  Pl. Mem. of Law at 8 (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 25

N.Y.3d 543, 550 (2015)).

New York's statute governing the assignment of claims provides, with certain exceptions

not relevant here, that "[a]ny claim . . . can be transferred."  *See* N.Y. Gen. Oblig. Law § 13–101.

This includes fraud claims, which "are freely assignable in New York," provided that there is

"some expressed intent or reference to tort causes of action, or some explicit language

evidencing the parties' intent to transfer broad and unlimited rights and claims." *Pa. Pub. Sch.

Emps.' Ret. Sys.*, 25 N.Y.3d at 550–51.  "The owner of the claim need not use a particular form

of assignment."  *Digizip.com, Inc. v. Verizon Servs. Corp.*, No. 14-CV-1741, 2015 WL 1283676,

at *3 (S.D.N.Y. Mar. 20, 2015); *see also Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp.

2d 229, 236 (S.D.N.Y. 2007) ("No specific language is required in order to transfer a tort cause of action.").  The assigner need only "manifest an intention to make the assignee the owner of the claim." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (cleaned up); *see also Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000) ("Any act or words are sufficient which show an intention to transfer all rights to the assignee.") (citation omitted); *Pa. Pub. Sch. Emps.' Ret. Sys.*, 25 N.Y.3d at 550 ("[W]here an assignment of fraud or other tort claims is intended in conjunction with the conveyance of a contract or note, there must be some language—although no specific words are required—that evinces that intent and effectuates the transfer of such rights.")

Because the words of the assignment are of paramount importance, *Int'l Design*, 486 F. Supp. 2d at 236, the inquiry must begin there.  The crux of the issue is whether Plaintiff unambiguously expressed an intent to assign the right to sue Defendant on the claims asserted here.  Section 2.1 of the BPA provides: "The Sellers shall sell, transfer and assign and the Buyer shall purchase and assume (i) the Business as a going concern and (ii) the Assets as at, and with effect from, the Transfer Time."  BPA § 2.1.  "The Assets shall comprise . . . (7) the benefit of all Claims" and "(9) all other assets, property or rights of the Sellers which are used in or relate to the Business as at the Transfer Time."  *Id.* § 2.2.7, .9.  Section 1.1 defines: (1) "assets" as "the property, assets and rights of the Sellers listed in clause 2.2 . . . other than the Excluded Assets"; and (2) "claims" as "the benefit of all rights and claims which the Sellers have against third parties relating to the Assets and the Business, including, but not limited to, all manufacturers' and suppliers' warranties and representations and all rights against insurers in respect of any policies effected by the Sellers in connection with the Assets and the Business."  *Id.* § 1.1. Section 2.3 provides that certain assets are excluded from the transaction such that "the Buyer

shall not acquire any right, title or interest" in them, *id.* § 2.3, and Schedule 2 lists the excluded

assets, *id.* at 36–38.  Among the assets listed in Schedule 2 are the rights of the Seller with

respect to taxation and indebtedness, several lease agreements, a supplier contract, and nine

customer contracts.  *Id.*; *see also* APA § 1.2(b) ("the Excluded Assets shall include" a New

Jersey lease, a New York lease, and "all Assets that are 'Excluded Assets' as such term is

defined in the [BPA] and set forth [i]n Schedule 2 of the [BPA]").

       Defendant asserts that the language in the BPA transferring "the benefit of *all* rights and

claims which the Sellers have against third parties relating to the Assets and the Business," Def.

Mem. of Law at 17 (emphasis in original), is "direct and unambiguous evidence of the parties'

intent that Plaintiff transfer broad and unlimited rights and claims related to the Assets and the

Business," *id.*; *see also* Def. Reply Mem. of Law, Dkt. 33 at 3–4 ("Plaintiff completely ignores

the catchall description of 'all other assets, property or *rights* of the Sellers which were used in or

relate to the Business as at the Transfer Time' used in Section 2.2.9.") (emphasis is original).

Defendant further argues that a review of the excluded assets listed in the BPA and APA

"quickly reveals that Plaintiff's claims were indeed not excluded or reserved in any way";

"unless Plaintiff's claims were specifically excluded, they were transferred."  Def. Reply Mem.

of Law at 4 & n.1; *see also id.* at 3 ("The language of the BPA is clear: Plaintiff transferred these

claims and did not exclude these claims from being transferred when it could have bargained for

exactly that.").  Defendant relies principally on *Digizip.com*, arguing that "[t]his case is nearly

identical."  Def. Mem. of Law at 17.

       In response, Plaintiff argues that the BPA "applies only to claims against 'third parties'

such as manufacturers and suppliers," and that Mr. Moulding, as Plaintiff's then-CEO, "was not

a 'third party.'"  Pl. Mem. of Law at 9.  Plaintiff also argues that the examples of claims assigned

under the BPA "confirm that the assigned claims are limited to third party claims against vendors and other counterparties, not then-unknown tort claims and claims for breach of contract against a high-level executive." *Id.*; *see also id.* ("This is *not* a 'broad' assignment of all known and unknown claims that would include fraud and contract claims against Moulding.") (emphasis in original). Plaintiff asserts that "this conclusion is further buttressed by the fact that 'Claims' are defined in the BPA to include only rights and claims 'related to the Assets and the Business,'" and that "Moulding's misconduct was not part of the 'Business' or related to those 'Assets'." *Id.* at 10. Finally, Plaintiff argues that Defendant's reliance on *Digizip.com* is misplaced because, "[i]n *Digizip*, the asset sale agreement transferred *all* claims"; "[c]onversely, the BPA . . . transferred only *third party* claims." *Id.* at 11 (emphasis in original).[4]

The Court agrees with Defendant that the language of the BPA (and APA) is broad enough to constitute an "unequivocal and complete assignment" of Plaintiff's rights, including the right to bring the claims asserted here, leaving Plaintiff without standing to sue. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). In signing the BPA, Plaintiff sold and conveyed to Pharmaspectra "the benefit of all Claims" — defined as "the benefit of all rights and claims which the Sellers have against third parties relating to the Assets and the Business" — and "all other assets, property or rights of the Sellers which were used in or relate to the Business as at the Transfer Time." BPA §§ 1.1, 2.2. While not as broad a conveyance as that in *Digizip.com*,[5] it is broad enough to reach the same result.

---

[4]     Plaintiff also argues that in *Digizip.com* "the plaintiff brought a post-merger claim against a third-party vendor for pre-merger overcharges," whereas Plaintiff "has brought a post-merger claim against its own CEO for breaches of contractual and common law duties in connection with the merger itself." Pl. Mem. of Law at 11.

[5]     There, the purchase and sale agreement provided that the Plaintiff "shall sell, convey, transfer, assign, and deliver to Purchaser . . . all of the right, title and interest of [Plaintiff] in and to the Acquired Assets," which were defined to include, among other enumerated items, ". . . all other assets of Seller as of the Closing Date . . . of every kind, nature, character, and description, whether real, personal or mixed, whether accrued, contingent or other, and

*See, e.g.*, *Banque Arabe et Internationale d'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 152 (2d Cir. 1995) (an assignment transferring "all of [the sellers] rights and interest" in the transaction was "sufficient to effect the assignment of tort claims based on fraud"); *In re: Motors Liquidation Co.*, No. 15-CV-9971, 2016 WL 3461359, at *2 (S.D.N.Y. June 21, 2016), *aff'd sub nom. Matter of Motors Liquidation Co.*, 689 F. App'x 95 (2d Cir. 2017) (holding that an assignment of "all of the 'rights, title and interest' in [the seller's] proof of claim as well as 'all other claims, causes of action . . . and other rights arising under or relating to' that claim" "clearly and unmistakably evinces 'the parties' intent to transfer broad and unlimited rights and claims'") (citation omitted); *Int'l Design*, 486 F. Supp. 2d at 237 ("The assignment of 'all assets of [AGI]' is broad enough to encompass all causes of action owned by AGI."); *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F. Supp. 434, 444 (S.D.N.Y. 1984) (holding that language transferring "all rights, claims and causes of action" "reflect[ed] an intention to transfer all causes of action — including any for fraud").

Although Plaintiff is correct that the BPA assigned only claims against third parties, its argument that the limitation means that its claims against Mr. Moulding were not assigned is nonsensical; it acknowledges that Mr. Moulding is not a party to the BPA or APA, *see* Pl. Mem. of Law at 15 (arguing that Defendant cannot rely on the BPA and APA, "to which he is not a party"); *see also* BPA at 1 (list of the parties to the agreement, which does not include Mr. Moulding). If Mr. Moulding is not a party to the contract, he is, by definition, a third party.

Plaintiff's argument that the type of third-party claims contemplated are only those against vendors and other counterparties, *see* Pl. Mem. of Law at 9, incorrectly converts two of the three examples of third-party claims in the BPA into exclusory classes of claims, *see* BPA

---

wherever situated, and whether or not reflected in any financial statement of Seller." *Digizip.com*, 2015 WL 1283676, at *4.

§ 1.1 (assigning all of Plaintiff's rights and claims against third parties "including, *but not limited to*, all manufacturers' and suppliers' warranties and representations and all rights against insurers in respect of any policies effected by the Sellers in connection with the Assets and the Business") (emphasis added).[6]

Plaintiff's argument also discounts the language in § 2.2 of the BPA that transfers "the benefit of all Claims" and also "all other assets, property or rights of the Sellers which were used in or relate to the Business as at the Transfer Time."  BPA § 2.2.  Rights relating to the Business are not defined so narrowly as Plaintiff suggests, *see* Pl. Mem. of Law at 10, but instead must be understood to include rights related to the functioning of the business and its assets generally. Among those rights would be the rights of the company to Mr. Moulding's loyalty during the course of the purchase negotiation, loyalty that was, according to Plaintiff, breached.  *See* Am. Compl. ¶¶ 86–93, 101–13, 123.

Further, Schedule 2 of the BPA makes evident that Plaintiff could have, but did not, reserve rights related to Mr. Moulding's employment contract.  Schedule 2 excludes from the assets transferred a number of contracts, *see* BPA at 36–38; there is no reason why Plaintiff, as a sophisticated party represented by counsel, could not have bargained for the addition of Mr. Moulding's employment contract as an asset excluded from transfer.

Finally, the BPA was drafted in anticipation that Plaintiff would be dissolved, inasmuch as it was selling its business and all of its assets; "[t]he overall design and express commercial purpose of the Assignment transaction thereby reinforces" the conclusion that the assignment contemplated the transfer of Plaintiff's tort claims to Pharmaspectra.  *Banque Arabe*, 57 F.3d at 152.  "A party about to become defunct has little incentive to reserve transactional rights when

---

[6]     Plaintiff omits entirely any reference to "all rights against insurers," further undermining its argument that the BPA is limited to the types of third-party claims it urges.

transferring its interests to its surviving parent corporation." *Id.* at 153 ("This conclusion is also consistent with the general trend in New York toward adopting principles of free assignability of claims, including those of fraud."); *see also Int'l Design*, 486 F. Supp. 2d at 237 ("I also note that AGI was a defunct entity and would have had little incentive to reserve transactional rights.") (citing *Banque Arabe*, 57 F.3d at 152–53); *Pro Bono Inv., Inc. v. Gerry*, No. 03-CV-4347, 2008 WL 4755760, at *18 (S.D.N.Y. Oct. 29, 2008) ("[i]t makes no sense to conclude that the shell of [a company] retained any rights to sue" where "all of the assets of [the company] were transferred").

Because the BPA constitutes an "unequivocal and complete assignment" of Plaintiff's rights, *see Aaron Ferer*, 731 F.2d at 125, including the right to bring the claims asserted here, Plaintiff does not have standing to sue.  Accordingly, Counts One through Seven are dismissed for lack of subject matter jurisdiction.

**B.    Count Eight**

Count Eight seeks a declaratory judgment regarding Defendant's indemnity obligations related to an unsatisfied tax claim allegedly owed by Plaintiff to the United Kingdom tax authorities.  *See* Am. Compl. ¶ 202.

Defendant argues that "Plaintiff has not alleged why the tax is owed, that it actually paid the alleged tax claim, or that any liability for the tax claim has been imposed upon it, such that there would be anything to indemnify."  Def. Mem. of Law at 19.  Instead, Defendant argues, "Plaintiff appears to allege that the unsatisfied tax claim is part of unpaid taxes that are owed by a third party, M3 Cubed, but the United Kingdom taxing authorities have not yet actually sought this amount from M3 Cubed."  *Id.* (citing Am. Compl. ¶ 200); *see also* Def. Reply Mem. of Law at 8 ("[T]he only tax liability alleged in [Plaintiff's] Amended Complaint is an unpaid tax owed

by a third party M3 Cubed and, by its own allegations, no liability for this tax has been imposed on Plaintiff, a necessary prerequisite before an action seeking declaratory relief related to indemnification obligations.") (citation omitted).  Defendant argues that "[t]his falls well short of the showing required to establish an actual justiciable controversy ripe for adjudication regarding indemnification obligations."  Def. Mem. of Law at 19–20 (citing *Scottsdale Ins. Co. v. Jian Li Structure, Inc.*, No. 18-CV-1744, 2020 WL 5622201, at *5-8 (E.D.N.Y. Aug. 28, 2020)).  Plaintiff's rejoinder is that Defendant "simply ignores the allegations of the Complaint," which show "that there is an actual, non-contingent tax liability of at least $509,002.85 as a result of Moulding's work in the United Kingdom and his unauthorized formation of a Pharmaspectra entity there."  Pl. Mem. of Law at 11 (citing Am. Compl. ¶¶ 188–201).

  "The Declaratory Judgment Act permits a district court, in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of any interested party seeking such declaration, whether or not relief is or could be sought."  *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 353 (2d Cir. 2020) (per curiam) (cleaned up).  "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and Controversies' that are justiciable under Article III of the Constitution."  *Id.* (cleaned up).  An action seeking declaratory relief satisfies the case-or-controversy requirement if the dispute: (1) "is 'definite and concrete, touching the legal relations of parties having adverse legal interests'"; and (2) "is 'real and substantial, such that it 'admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 353–54 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  The "party seeking a declaratory judgment bears the burden of proving the district court has jurisdiction."  *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (per curiam).

When a party is seeking "only a declaration regarding indemnity obligations, jurisdiction is often lacking." *Scottsdale Ins.*, 2020 WL 5622201, at *5. "[C]ourts generally decline to award declaratory relief in indemnification actions, especially before any underlying suit has been filed." *Solow Bldg. Co. v. ATC Assocs., Inc.*, 388 F. Supp. 2d 136, 139 (E.D.N.Y. 2005); *see also Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 18-CV-3225, 2020 WL 6822989, at *4 (S.D.N.Y. Nov. 20, 2020) (noting that it is "exceedingly rare" for courts to grant indemnification for future claims that have yet to arise, finding "only one published circuit court decision in which a court has allowed a plaintiff to seek a declaration as to indemnification for a . . . class of claims not before the court") (citing *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1040 (D.C. Cir. 1981)).  In order for indemnification claims to be ripe for adjudication, liability has to have been imposed upon the party to be indemnified.  *FSP, Inc. v. Societe Generale*, No. 02-CV-4786, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), *and adhered to on reconsideration*, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005); *see also Pac. Emps. Ins. Co. v. Saint Francis Care Inc.*, 729 F. App'x 129, 130 (2d Cir. 2018) ("Generally, because a duty to indemnify is based on the facts established at trial and the theory under which judgment is actually entered in a case, it is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established.") (internal quotation marks and citation omitted); *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013); *Bhd. Mut. Ins. Co. v. Ludwigsen*, No. 16-CV-6369, 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018).

Here, there is no live case or controversy because there is no pending case against Plaintiff as to which Defendant may have an indemnification obligation.  The only tax liability Plaintiff alleges is owed by a third party, M3 Cubed, making its allegation of tax liability a

matter of hypothesis, not imminent harm.  Because Plaintiff has not alleged adequately that it is subject to liability for the unpaid taxes, its claim for declaratory judgment is not ripe for adjudication.  Accordingly, its claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss.  The Clerk of Court is respectfully directed to close the open motion at docket entry 29 and to terminate this case.

**SO ORDERED.**

Date:  **November 30, 2021**
      **New York, New York**
                                **VALERIE CAPRONI**
                                **United States District Judge**